# SCRUGGS et al. v. TOWN OF SWEETWATER et al.
## —196 S. W. (2d) 717.

Eastern Section.  July 31, 1946.

Petition for Certiorari denied by Supreme Court, October 5, 1946.

Witt & Bratton, of Madisonville, for appellants.

W. E. Michael, of Sweetwater, for appellees.

BURNETT, J. After studying this case very thoroughly we find that the very able opinion of the Chancellor herein fully sets forth the facts, in which we concur, and the proper legal conclusions. We therefore adopt said opinion in toto. Said opinion is in the following words, to-wit:

"Complainants' bill seeks to enjoin the defendant from condemning certain property of complainants under an ordinance passed by defendants. extending the width of Miller Street between Main Street and Oak Street, pursuant to which notice was issued to complainants that at a meeting of the Mayor and Commissioners, to be held June 25, 1945, said Board of Mayor and Commissioners would appoint five (5) freeholders to assess the damages by complainants by reason of taking their property for said purpose.

"Complainants allege that Rhea Hammer conspired with certain abutting owners on Miller and Oak Street and with the Commissioners of said town that if complainants' property could be condemned and place his building on the corner he would contribute certain sums of money, to-wit: $1,000.00 to influential citizens to use their influence with the Board to have the complainants' property condemned, and also $2,000.00 to be used in payment of damages assessed for damages to complainants' property.

"That other individuals entered into the scheme to assist Hammer in his undertaking, etc., and that this plan was prompted by reason of the desire of said Hammer to have his building a corner building on the corner of Main and Oak Street; that defendants have caused to be published in the newspaper in the town of Sweetwater that it has received donations in the approximate amount of $2,000.00 on the proposed widening of Miller Street, all

of which it is alleged prejudices the rights of complainants to a fair trial, and that the widening of Miller Street is not for a public but for a private use for the benefit of Rhea Hammer; that defendants have abused their discretion, that said agreements and contributions embarrass complainants in a hearing on an action to condemn.

"Complainants pray for injunction.

"Defendants answer and admit that the ordinance to widen Miller Street was passed and notice given to complainants as alleged, and they deny categorically all allegations of fraud, conspiracy, collusion, schemes, or plots to injure complainants or to their prejudice.

"Defendant avers that it has the right, under the law, to improve streets.

"It avers that Rhea Hammer, et al, donated 25 feet of land owned by them to the rear of complainants' property, and, in addition, Rhea Hammer and other property owners along and abutting on said street made a cash contribution of $1,950.00 with which to help defray the expenses in acquiring land and improving Miller Street. The Mayor and Board of Commissioners having agreed to this agreement as fair and mutually profitable. It is denied that there was any consideration given to the fact whether Rhea Hammer would have a corner lot, or that complainants will suffer irreparable damage.

"Defendants deny that the taking is not for a public use and deny that it is for the sole and exclusive use of Rhea Hammer and aver the necessity for widening said Street, and deny that they have abused their discretion and deny all fraud and bad faith.

"By amended answer defendants say that Chancery Court is without jurisdiction to enjoin defendants from exercising its power of eminent domain.

██ "Under Code, Sec. 3397 et seq. municipalities have authority to condemn property for streets or other improvements, and municipal condemnation laws are construed in pari materia general condemnation laws, and the Statute awarding compensation to property owners is liberally construed in favor of the rights of the citizen affected when suit is brought for damages.

"Mayor [etc. City of Nashville] v. Nichol, 62 Tenn. 338.

█ "The necessity for and the expedience of the exercise of the right of eminent domain are questions to be determined by the legislative branch of the Government, however, it is the duty which is devolved on the Courts of the last resort to determine whether the particular use is a public use.

"Ryan v. [Louisville & N.] Terminal Co., 102 Tenn. 111. [50 S. W. 744, 45 L. R. A. 303].

█ "A Court of Law has exclusive jurisdiction in condemnation proceedings brought under the eminent domain statute.

"Hombra v. Smith, 159 Tenn. 308 [17 S. W. (2d) 921].

█ "A Court of Equity has no jurisdiction to interfere with or suspend an action at law for condemnation of property, except when the legal remedy is inadequate and equitable relief is necessary to prevent injury, destructive or irreparable, in its nature.

"Georgia [Industrial Realty Co.] v. [City of] Chattanooga, 163 Tenn. 435 [43 S. W. (2d) 490].

"In the case at bar it is alleged that the proposed widening of Miller Street is not necessary, and that the proposed widening is for a private purpose to enhance the value of privately owned property of abutting owners.

██ "This, of course is a question which properly comes in a Court of Law and may be relied upon and

shown in a proceeding at law, the burden on defendants here.

"The bill in this cause alleges that certain contributions have been made by private citizens, abutting property owners, and that such action is inimical and injurious to the rights of complainants in obtaining just compensation.

"The proof shows that $1,950 was contributed by adjacent and abutting owners, and the proof also shows that these contributions were made pursuant to and as a result of a committee which was appointed by the Board of Commissioners of defendant, who contacted said adjacent and abutting owners, or some of them, while the ordinance to widen Miller Street was pending; and while it is said by one of the defendants' witnesses that said contributions were voluntary, I think, from all the proof, that such contributions were made as a result of said committee's activities.

"It is insisted that these contributions were made because it would enhance the value of the property of Rhea Hammer, and the burden of the proof is that it would enhance the value of Hammer's property 25% or more for the reason that it would put his business on a corner of Main and Miller Streets when complainants' lot is condemned and Miller Street is widened 50 feet. It is evident that said improvement or widening of the street in question would rebound to the advantage of Hammer, but as the Court views it, this fact, within itself, is no just cause to restrain the defendant. If it is done for private reasons, or to enhance the value of property of a private individual primarily, this is a question open to complainants in a Court of Law, because defendants must show that the property is taken for a public use.

"Complainants also allege that there was a conspiracy or scheme on the part of Rhea Hammer to pay some influential citizen to influence the Commissioners to pass the ordinance in question and to condemn complainants' property.

"The proof does not sustain such a charge, and while two of the witnesses for complainant seem to indicate that they had heard of such charges, they declined and refuse to divulge who told them, and no witness testifies to such an arrangement or scheme.

"So far as the record indicates no such scheme was perpetrated, no one sought to influence the Board of Commissioners or any of them, and the Commissioners, nor any of them, received any award or the promise of any compensation for supporting the ordinance. In fact, so far as the proof indicates, the Board of Commissioners acted in entire good faith.

"One of the Commissioners stated that he would have voted for said ordinance any way and that said ordinance would have been passed by the Board regardless of the contributions by adjacent owners; but the inference is, from the proof, I think, that these contributions were an incentive, though perhaps not a positive cause or consideration for its passage.

"The question pertinent to this inquiry is whether under all the proof and the record the contributions made by Hammer and other adjacent owners is against public policy, or will it be detrimental to complainants' right in securing just compensation for the property taken. Our statutes provide that the municipality shall pay the fair cash market value of property taken, to be fixed in the manner provided by law.

"The Court is unable to see that the mere fact that some adjacent owners have made contributions to

assist in bearing the expense of a public improvement by a municipality would or could detract from or prevent the owner of property taken from receiving just compensation for the property so taken; after all it is a question of proof as to its value and I see nothing under such conditions to prevent adequate proof as to its value.

"The question of contributions to private citizens to pay part of the expense of improvements, by a municipality is a controverted question, and authorities do not agree. Some of our Courts hold that it is against public policy as shown by the case of Edwards v. Goldsboro, 141 N. C. 60 [53 S. E. 652], 4 L. R. A., N. S., 589, 8 Ann. Cas. 479, with notes and annotations. To the contrary is State of New Jersey v. Mayor of [City of] Orange [54 N. J. L. 111, 22 A. 1004], 14 L. R. A. 62, and notes and annotations.

"The rule is stated in 38 Am. Jur., 249, Par. 561. The substance of which is that the municipality must at all times retain freedom of judgment, so that its decisions will be influenced only by a regard for the public welfare, in the one instance; and on the other hand it is said an offer by a land owner to pay a certain sum or portion of the cost of a particular public improvement is not necessarily illegal if the board of public officers determine that public necessity and convenience require it. (Numerous citation to this text.)

"In 44 C. J., 193, Par. 2336, it is stated that a municipality may accept from individuals aid in making authorized improvements, and may enter into a contract for that purpose. (Citations.)

"In this case it does not appear that there was a bribe or attempt to bribe, neither does it appear that the offer of adjacent land owners hold out any personal advantage to any member of the Board of Commissioners, and so far

as the record discloses the ordinance would have passed in any event, and that said Board acted in good faith and free from fraud or hostile influence, or the exercise of unwarranted violation of private rights of complainants. Neither was its action so unreasonable as to amount to an oppressive and manifest abuse of discretion.

"Upon the proof and the entire record, the Court is constrained to dismiss complainant's bill with cost.

"So decree, and grant appeal, allowing time to execute bond and perfect appeal."

McAmis, J., concurs.