JAY C. EVANS

*v.*

CHARLES A. WHEELER, JR., et al.

348 S. W. 2d 500.

(*Nashville,* December Term, 1960.)

Opinion filed July 26, 1961.

Jay C. Evans, and Joseph L. Lackey, Nashville, for appellant.

Tyree B. Harris, III, Nashville, for Mayberrys.

Elmer Davies, Nashville, for Wheeler, Gibson & George.

Shelton Luton, County Attorney, Nashville, for Pitts and Davidson County.

Mr. Justice Tomlinson delivered the opinion of the Court.

This case has been in our Courts for a number of years. One issue thereof, and renewed here, was decided by this

Court in the early part of 1955 in the case of *Evans v. Mayberry et al.,* 198 Tenn. 187, 278 S.W.2d 691, 279 S.W. 2d 705. The Court of Appeals is in accord with the findings and decree of the Chancellor. Evans seeks certiorari. It was granted.

Evans owned 43 acres on the East side of Cooper Lane and 33 acres on its West side, all in Davidson County. The tract on the East is now quite suitable for subdivision into residential lots. A few lots thereon have already been sold. Had Evans' suit in this case been successful, it would have made adjoining tracts belonging to respective defendants unsuitable for subdivison or useless as a sub-division by blocking these lands from reasonable access to public roads.

As a matter of fact, however, one of the two roads claimed by Evans has been found to be dedicated to public use, and this finding is supported by substantial evidence. Evans undertook to prevent its use, however, by building fences across it. The Davidson County Highway Department tore these fences down. An injunction against that was unsuccessfully sought by Evans.

As to the other road, while the County considered itself to be the owner, its rights seemed doubtful. Therefore, to acquire same as a public road, it filed in this cause a petition for condemnation thereof. The usual eminent domain proceedings were had by orders of the Chancellor and damages fixed.

Ordinarily Chancery Court has no jurisdiction of eminent domain proceedings. However, Evans commenced this suit in that Court for the purpose of procuring equitable relief by way of injunction, etc. to which he alleged he was entitled. Since the Chancellor acquired

44

jurisdiction for those proceedings, so, "upon familiar maxims of equity" it was authorized to retain "jurisdiction for the purpose of assessing damages" etc. in so far as the case turned into eminent domain proceedings. *Armstrong v. Illinois Central Railroad Company,* 153 Tenn. 283, 302, 303, 282, S.W. 382, 387; *Chambers v. Chattanooga Union Railroad,* 130 Tenn. 459, 463, 464, 171 S.W. 84.

Evans labels these condemnation proceedings a conspiracy between these defendants, adjoining property owners, and the County Highway Department and the Planning Authority of Davidson County. His insistence is that the condemnation was not for a public use, but for the benefit of the defendant adjoining property owners. The Courts have found to the contrary on substantial evidence. That finding is conclusive in considering this certiorari.

Evans sought to procure a decree directing that all costs of the condemnation proceedings be paid by the individuals who in their capacity as officials of Davidson County instituted and prosecuted these proceedings. This, too, was based on the theory of conspiracy. The Courts denied him such relief, and further held that he could not maintain that suit as a taxpayer in any event. The reasons are stated in the opinion. No error is found in such action of the two preceding Courts.

One of the several branches of this suit grows out of the fact that some years before any litigation started Evans procured his brother to purchase an adjoining 40 acres and says that his brother then orally agreed to sell it to him for $8,000 and that he paid his brother $1,000 thereon. Subsequently, his brother sold the property to one of the defendants herein for $11,000. This too is

charged by Evans to have been a part of the conspiracy. He brought suit, not against his brother, but against the one who purchased the property from Evans on the ground that he wrongfully persuaded his brother to breach this contract.

The Circuit Court sustained a demurrer directed to the proposition that the contract, being unenforceable between the actual parties to the suit, the action would not lie against defendents. This Court in affirming that action said:

"If the party to such oral agreement would not be liable for noncompliance therewith, it is legally incomprehensible that another person would be liable for procuring him not to perform." [198 Tenn. 187, 278 S.W.2d 692.]

In the instant case the liability of the other defendants, as parties to this alleged conspiracy, is again urged upon the Court. *Evans v. Mayberry,* supra, wherein the point is decided, is violently attacked.

*Evans v. Mayberry* affirmatively recognized that the view stated by it was perhaps the minority view, but it regarded the same as the better view. Whether that decision be right or wrong, it is certainly the law of this case, as the two preceding Courts have held. Hence, the insistence here renewed for liability of these parties was necessarily rejected by these Courts, and must be rejected here.

Unless it be as to the one issue now to be discussed, all the insistences of Evans have been correctly decided by the Court of Appeals, and the reasons for such decision clearly stated in its opinion. Nothing is to be

gained by prolonging that discussion. It was for this reason that this Court, in granting the writ, limited the argument to this remaining issue.

The physical situation out of which this issue grew is correctly described in the Clerk & Master's report made in response to the Chancellor's order of reference. The order of reference, in so far as here pertinent, is this:

"After careful deliberation this Court finds that Cooper Creek was upon the land of complainant and Davidson County was in violation of complainant's right in rechanneling the creek so as to remove it from complainant's land. The complainant was damaged by the County's action but his proof on this issue is so highly speculative that this Court cannot make a finding of damages. A reference to the Clerk and Master is proper on this item."

The report of the Clerk & Master responsive thereto is this:

"On August 25, 1958, an order was entered in Minute Book 183, page 403, requiring the Master to hear proof and report as to what damages, if any, the complainant is entitled to recover against Davidson County for the diversion of that portion of Cooper Creek that formerly ran under Cooper Lane to the easterly side of said Lane.

"Pursuant to said order I report as follows. At one time a few years ago Cooper Creek ran in a southerly direction on the westerly side of Cooper Lane. At a point in or near the boundary line of property owned by the complainant this creek ran under the Lane to the easterly side and for a distance of something like a

hundred feet continued down the easterly side of the right of way and then ran back under the lane to the westerly side. The complainant owned land on both sides of Cooper Lane, 43 acres on the easterly side and 33 acres on the westerly side of said lane. At the point where the creek ran on the easterly side the east bank had washed back so that for a short distance the water was within the fence line of complainant's property. A few years ago Davidson County improved or rebuilt Cooper Lane through complainant's property and diverted the creek entirely to the westerly side of Cooper Lane, eliminating the water on the easterly side. The question to be determined therefore is whether this diversion damaged the complainant, and, if so, how much.''

Davidson County had diverted this stream without any eminent domain proceedings on the theory that the stream of water on the east side was entirely in the right of way of Cooper Lane; hence, that the County had the right to divert it to the west side in the improvement of the road, etc. The reason the County decided to divert the stream which it thought was entirely within the right of way of Cooper Lane so as to place it all on the west side of that road at this point was to avoid the necessity of building two bridges estimated to cost some $25,000.

█ No exception was taken as to the Chancellor's finding that the stream of water to the extent stated on the east side of Cooper Lane was on the land of Evans. It must follow that the diversion of this water for that 125 feet to the west side of Cooper Lane amounted to a taking of that stream from Evans.

*Coyne v. City of Memphis*, 118 Tenn. 651, 671, 102 S.W. 355, 360, is as follows:

48

"To constitute a taking of property, it is not necessary that any material thing be actually taken. It is enough if any right of the owner respecting the thing owned be impaired, so that he cannot apply the thing to all the uses of which it was formerly capable. The Legislature cannot authorize either a direct or a consequential taking or injury to property without compensation; and if a corporation voluntarily, for its own benefit, so constructs a work as necessarily to injure the property (that is, the thing owned) of an individual, or deprive him of any right he may possess regarding the thing which he owns, or his rights therein, it will be bound to compensate him for his damages, even though the work be properly and lawfully construed."
(No doubt, meaning "constructed".)

What we actually have, therefore, in this case with reference to the issue now under discussion is that the County took Evans' property, to-wit, this stream, for public purposes without the institution of eminent domain proceedings.

For a number of years previous to the diversion of this stream Evans had used this 43 acres of land in carrying on the business of a riding academy. There were some thirty odd head of horses there at the time and a club house and places for hay rides and kindred entertainments. With reference to that the Clerk & Master in his report said this:

"The complainant operated the property as a farm and a riding academy, and therefore needed water for said purpose. The master conceives the real issue however to be not the use the complainant makes of the

land, but what is its highest use value, and whether or not there has been damage to this highest use value.''

▮▮▮▮ This part of the Master's report is responsive to the contention of Evans that the damages to which he is entitled are to be determined by the particular use to which he is putting the property, to-wit, as a riding academy. That is not the yardstick unless the use is peculiar to the owner. Any other owner, as well as Evans, could operate a riding academy on the 43 acres. So its use is not one peculiar to Evans. Since the ''use peculiar to the owner'' exception is not applicable here, the true rule is that ''in determining the market cash value of property everything in proof which enhances or depreciates its worth should be taken into consideration'', *Lebanon & N. Turnpike Co. v. Creveling,* 159 Tenn. 147, 159, 161, 17 S.W.2d 22, 26, 65 A.L.R. 440, having in view, ''the uses to which it is being devoted by the owner at the time of the taking, together with all other elements of value of which it is capable.'' *Southern Railroad v. City of Memphis,* 126 Tenn. 267, 297, 148 S.W. 662, 669, 41 L.R.A. N.S., 828.

▮▮▮▮ In so far as it applies to the question of off setting incidental damages by incidental benefits, the yardstick used by the Clerk & Master, to-wit, the ''highest use value'' is applicable. That is, the diversion of this stream, in so far as it increased the value of the 43 acres as building lots, is an item which may be credited against the incidental damages, if any, to the 43 acres. *Faulkner v. City of Nashville,* 154 Tenn. 145, 166, 285 S.W. 39, 45, in dealing extensively with this question, concluded as follows:

"From the foregoing authorities, the conclusion must be reached that the increased accessibility to the defendant's property, the convenience afforded her in getting to and from it with trucks and other vehicles, and the increased facilities for stopping and parking vehicles in front of it, were all advantages peculiar to the defendant's property. In other words, the advantages of a more convenient access to her property, and of having a front upon a more desirable street, were direct benefits accruing to it, giving it increased value, and that such direct and peculiar benefits are proper advantages to be considered in estimating her damages to the remainder not appropriated by the city."

Since it was established that the County had taken, for a public purpose, but without condemnation proceedings, the property of Evans, to-wit, a diversion of this stream, it follows that the proceedings for the ascertainment of the damages to which Evans is entitled by reason of diverting the stream are governed by sec. 23-1423, T.C.A. In such a situation, the owner may petition for a jury of inquest as in eminent domain proceedings,

"or he may sue for damages in the ordinary way, in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest."

Evans' suit as to this item is, in the alternative, for damages.

Had the statute, sec. 23-1423 T.C.A., quoted above, been literally followed, the actual and incidental damages to which Evans was entitled by reason of the taking of this stream was a jury question. But the action of the

Chancellor in referring the matter to the Clerk & Master with direction that he hear proof and report as to such damages was not excepted to by Evans, nor does it appear that he entered any objection thereto. He, therefore, necessarily is bound by the procedure followed in ascertaining such actual and incidental damages.

The Master's report, concurred in by the Chancellor, is that Evans is entitled to no amount by way of damages, actual and incidental, for the taking of the property of Evans, to-wit, this stream. His report is:

"This witness testified that the 43 acres had the highest use value of subdivision property worth $1200.00 per acre, while the 33 acres, or west tract, is of value only as farm land worth $400.00 per acre, as this tract is low and subject to flood by Cooper Creek. There is no proof in the record that the change of the creek caused this flooding, or that it in any way increased the flooding.

"The testimony discloses that the water can be placed on the 43 acre tract by pumping across the road at a cost of $800.00 to $1,000.00, but that the failure to do so would have no effect upon the value of the 43 acres in its highest use. As a matter of fact, if the creek were still on the east side, it would be necessary to build a retaining wall along the creek bank to make those lots bring their highest value."

■ In so far as it is confined strictly to the value of the stream diverted from Evans' land without regard to the effect upon the 43 acres caused by such removal, it must be conceded that the value is entirely nominal. Perhaps it is for this reason that the rule announced by some

Courts is stated in the text on "Eminent Domain" in 18 American Jurisprudence, Section 252, page 890, as follows:

"Section 252. Water and Water Rights.—When the waters of a, pond or water-course are taken for a public use, the measure of damages is not the value of the water taken from the stream or pond, but the decrease in the market value of the riparian land by reason of the diversion of the water."

This rule seems to be the same as that stated in the text on Eminent Domain in 29 C.J.S. sec. 114, p. 926, as follows:

"In general a taking or destruction of, * * * riparian or other water rights which causes special injury to the owner is ground for the recovery of compensation under eminent domain provisions".

At its sec. 150, p. 1006, this text reiterated the rule just above quoted by its statement that "[the] diversion * * * of the waters of a stream * * * for which compensation must be paid to riparian owners * * * is the depreciation in the value of the land affected, or the difference in the value thereof before and after the taking or injury".

The rule thus stated, supra, in the text of American Jurisprudence and Corpus Juris Secundum seems to be the only practical method of determining the damages, if any, to which Mr. Evans is entitled for the diversion of this stream, as aforesaid. That is, under the peculiar situation existing here, it is the opinion of this Court, both as a matter of principle and upon authority, that the only recovery to which Mr. Evans is entitled is the decrease in value of the 43 acre tract by reason of this diversion of that stream.

■ The Clerk & Master and the Chancellor have concurred in finding upon substantial evidence that there is an increase rather than a decrease in the value of the 43 acres by reason of this diversion. The Court of Appeals thought this finding to have been justified. This Court is bound by such concurrent findings.

Since the Master reported that the water could "be placed" back on the 43 acre tract by pumping across the road at a cost of from $800 to $1,000, the question arises as to whether Mr. Evans is entitled to an award for such cost of replacement. Upon reflection, it will be realized that to award the property owner for the cost of avoiding the result of the diversion would be to establish a dangerous, as well as an unsound, principle. The physical situation might be such, and in many cases would be, that the cost of avoiding the result of a diversion of the stream might very well exceed by far the entire value of the tract of land from which the stream was, or is to be, diverted.

Its text on Eminent Domain in 18 American Jurisprudence, Section 252, page 891, answers this question in the following language:

"Where riparian property has been injured by lowering the level of the water so as to interfere with access between the water and land, the measure of damages is the difference in value of the property before and after the injury was done, and not the cost of changes made to avoid the result of the change in conditions."

In the Illinois case of *Beidler v. Sanitary District of Chicago,* 211 Ill. 628, 71 N.E. 1118, 67 L.R.A. 820, the sovereign reduced the level of the water in the canal adjoining plaintiff's property. In order to avoid the results

thereof the property owner deepened the canal as it passed his property so as to make the depth of the water at his docks the same as it was before the Sanitary District interfered. The owner sought an award for the cost of such restoration. The Court, in rejecting this claim, 71 N.E. at page 1121, 67 L.R.A. at page 843 said this:

"In other words, if the fair market value of the property is as much immediately after the construction of the improvement as it was before the improvement was made, no damage has been sustained, and no recovery can be had." (Citing many cases.)

It is the conclusion of the Court that Mr. Evans is not entitled to any award for the estimated cost of putting back the water on the 43 acre tract by pumping it across the road.

The judgment of the Court of Appeals will be affirmed with costs of the appeal divided equally between Davidson County and Mr. Evans.