Joseph P. Zirkle, et ux., Appellants,

*v.*

City of Kingston, Appellee.

396 S.W.2d 356.

(*Knoxville*, September Term, 1965.)

Opinion filed November 17, 1965.

M. F. McDavid, Harriman, for appellants.

Robert L. Badger, Kingston, McCluen & Cooley, Rockwood, for appellee.

Mr. Justice White delivered the opinion of the Court.

Appellants, Joseph P. Zirkle and wife, complainants below, filed their original bill stating they owned certain property located adjacent to the City of Kingston, which they developed into residential subdivisions intended for sale to the public. Among these subdivisions are two, known as Piney Woods and Oak Terrace, in which they installed a system of water lines and sewer lines beneath the surface of the subdivision roads, which roads were dedicated to the public use while other parts of said lines are beneath the surface of the land yet owned by the complainants.

The City of Kingston has now annexed the property embraced within said subdivisions and has appropriated

* * * to its own use and benefit, under claim of ownership, the said sewerage and water lines system, together with the property under which the same are installed and has refused to pay complainants compensation therefor, resulting in an unjust and unlawful confiscation of their said property.

according to the bill.

The prayer of the bill was for: (1) An injunction restraining defendant's trespassing on the property and maintaining the sewer and water lines; (2) A declaration of rights as to these sewer and water lines; and (3) Damages for the conversion under the theory of unjust enrichment or quasi contract.

The bill also contends that the complainants are entitled to compensation for the taking of their property by the City of Kingston without paying just compensation therefor, contrary to the State and Federal Constitutions.

The defendant, City of Kingston, filed a demurrer to the bill of complaint, as amended, and for the grounds thereof averred: (1) The bill as amended fails to state an equitable cause of action against the defendant herein; (2) The said bill fails to allege any ground of equitable jurisdiction; (3) The allegations of the bill clearly reflect that the matters and things complained of therein represent an alleged taking of property or property rights of the complainants by municipality for public use, to-wit: a public water system and sewer system, which act, if committed by the defendant, would not be subject to injunction and would not be subject to a damage suit in Chancery Court; and (4) The bill seeks relief on matters which are exclusively in the jurisdiction of the Circuit Court and are not subject to relief in this Court.

Upon consideration of said original bill, as amended, and the demurrer filed thereto, the court prepared a memorandum opinion, which was later incorporated in the final decree, in which it was held:

The original bill expressly recognizes that the defendant, a municipal corporation, has the usual municipal authority to acquire and operate sewer and water systems and that it has the usual municipal power of eminent domain.

The demurrer, in general terms,

\* \* \* questions the jurisdiction of chancery and contends that the eminent domain statutes confer the exclusive avenue of relief to complainants in that their remedy is that of so-called "reverse condemnation" and that, if any of the property taken were treated as personalty, then the suit would be one for unliquidated damages and thus not of equitable cognizance.

The memorandum opinion set forth next that the complainants sought to invoke the aid of the Chancery Court through the injunctive process as a basis for maintaining the suit in equity. The chancellor in disposing of this contention said that since the original bill recognized the defendant possessed the powers and authority of eminent domain that this within itself shows that complainants' relief, whatever it might be, would not include that of an injunction.

Complainants could not, simply by praying for an injunction, in the absence of averment showing a bona fide basis for same, thus confer equitable jurisdiction where it does not otherwise exist.

The court held that the bill did not show a right to injunctive relief.

The court further set out in its memorandum opinion that

The sewer and water systems in question were all installed underground across, or rather, under, land owned by Complainants and roads which have been developed across Complainants' subdivisions and which appear to have been dedicated for use of the general public.

Finally, it was the opinion of the court that:

The Complainants have a plain and adequate remedy at law; and further that complainants do not aver a bona fide ground for injunctive relief and that a Court of Chancery is without jurisdiction to award damages sought in the bill.

There are several assignments of error. The first one is that the chancellor erred in holding, in effect, that (a) the only claim set forth in the bill upon which the jurisdiction of the Chancery Court could be invoked was that of injunctive relief; and (b) the chancellor erred in holding complainants did not aver a bona fide ground for injunctive relief; (2) (a) the chancellor erred in holding in effect there is no chancery jurisdiction set forth in complainants' bill because the remedy at law is plain, adequate and complete; (b) the chancellor erred in holding in effect that the bill set forth no concurrent jurisdiction in chancery conferred by statute; (c) the chancellor erred in holding in effect that there is no chancery jurisdiction in the bill for declaring the rights and interests of the parties; and (d) the chancellor erred in holding that the Chancery Court of Roane County is without jurisdiction of any of the matters set forth in the bill and in dismissing the bill and in taxing the complainants with the cost.

After a careful examination of the bill, the demurrer, the action of the chancellor thereon, the assignments of error, and the applicable law, we think the determinative question on this appeal is whether the complainants have an adequate remedy at law, and if so, the action of the chancellor should be sustained unless, of course, equity is required to take jurisdiction of this case for some other reason.

It is averred in the bill that the City of Kingston has appropriated to its own use and benefit, under claim of ownership, the sewerage and water systems, together with the property under which the same are installed, and has refused to pay complainants compensation therefor.

The appellee, City of Kingston, is a municipal corporation and as such has the right, power and authority to exercise eminent domain over the property involved here, provided, of course, that the property is taken for public use, but in the event of the exercise of this high power the owners of the property so taken shall receive just compensation therefor as required by both the Federal and State Constitutions.

Article 1, sec. 21, of the Constitution of Tennessee provides:

That no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor.

This section of the Constitution is a part of the Declaration of Rights as guaranteed to all citizens of this State.

Under T.C.A. sec. 6-1401 et seq., municipal corporations are empowered to take and condemn lands, property, property rights, privileges and easements of others, for the purpose of constructing, laying, repairing, or extending sewers, water system, or drainage ditches, both within and beyond the corporate limits, and of acquiring ingress and egress in the construction, repairing or maintenance thereof, and in making connections thereto.

The compensation to be paid as damages for the taking of such shall be paid by said municipalities and the amount thereof shall be determined in the mode provided by T.C.A. secs. 6-1007—1011, and the rights and powers contained in said sections are conferred upon all of the municipal corporations, as specifically as if enacted into the provisions of Chapter 14.

T.C.A. sec. 6-1408 provides that every incorporated city and town in this State is authorized and empowered to own, acquire, construct, extend, equip, operate and maintain, within or without the corporate limits of such city or town, a water works system and/or a sewerage system, to provide water and/or sewerage service and to charge for such service.

T.C.A. sec. 6-1409 merely provides that one or more water works and/or sewerage systems, owned by one or more persons or corporations, may be acquired under authority of T.C.A. secs. 6-1408 and 6-1439 as a single enterprise. The purpose of Chapter 68 of the Public Acts of 1933, which has been codified in Chapter 14 of Tennessee Code Annotated, some sections of which have been referred to above, is to create an additional and alternate method for the acquisition of water works and/or sewerage systems by any incorporated city or town, and it was not the purpose of the Act to include, amend, alter, or repeal any other statute (T.C.A. sec. 6-1439; *Town of Selmer v. Allen,* 166 Tenn. 476, 63 S.W. 2d 663 (1933)).

T.C.A. sec. 23-1422 provides that no person or company shall, however, enter upon the land of another for the purpose of actually occupying the right of way, until the damages assessed by a jury of inquest and the costs

have been actually paid, or if an appeal has been taken, until the bond has been given to abide by the final judgment as provided in other sections of the Code.

T.C.A. sec. 23-1423 provides that if any such person or company has actually taken possession of such land, occupying it for the purpose of internal improvement, the owner thereof may petition for a jury of inquest, in which case the same proceedings may be had, as near as may be, as set out in prior sections of the Code, or he may sue for damages in the ordinary way, in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest. This statute is referred to generally as the reverse condemnation statute, or procedure and is available to a landowner when his property, property rights, etc., have been taken without due compensation having been made or provided therefor.

T.C.A. sec. 6-1410 makes provision and authorization for a city or town to condemn property for any and all purposes necessary for the completion of a water works and/or sewerage systems and it further provides that where condemnation proceedings are employed, they shall be in accordance with the established laws of the State of Tennessee. As we have said, T.C.A. sec. 23-1423 is a part of Chapter 14. It seems clear to us that since a municipality is required in a condemnation proceeding to act ''in accordance with the established laws of the State of Tennessee and chapter 14 of title 23,'' that the owner has an adequate remedy available to him under said T.C.A. sec. 23-1423, where, as here, sewer and water lines have been taken without just compensation being made therefor. And, this includes his right as set

forth in said section to *"sue for damages in the ordinary way."* Under no circumstances could a condemning authority take property without being required to provide just compensation therefor as required by our Constitution.

█ In support of the position of the appellants that the reverse condemnation statute aforesaid contemplates only land condemnation, the case of *Memphis Gaslight Company v. State,* 46 Tenn. 310 (1869), is cited. This case involved the taxation of gas pipes laid through the streets of a city, and in that case the Court held that sewer and water lines are personalty and not realty. The case, however, was a tax case and turned on the issue of whether the pipes were "part of the manufacturing establishment" within the meaning of the statute. From our examination of this case it appears that it was mere dictum for the Court to state that these pipes were personalty and not realty. It is unnecessary, however, in the case at bar to determine whether the sewer and water lines are personalty or realty because in either event the appellants are entitled to be paid just compensation for their taking and if such damages are not paid when the property is taken, then the appellants have the right to bring a suit for damages to collect the just amount due them.

In the recent case of *Hopper v. Davidson County,* 206 Tenn. 393, 333 S.W.2d 917 (1960), this Court held that a lessee, operating a business on certain private property which was seized by the county, was entitled to damages under the reverse condemnation statute for the value of fixtures on the property, basing its decision on Article 1, sec. 21 of the Constitution as aforesaid.

If a mere lessee of property is entitled to recover damages for the taking of fixtures under T.C.A. sec. 23-1423, the owner of property, water and sewer lines in this case, for a stronger reason should be permitted to recover for loss of such lines under the statute.

In 11 McQuillin, Municipal Corporations sec. 31.09 (1964), it is provided:

> * * * in some cases private sewer lines are regarded as becoming municipal lines merely through connection and integration in the latter; however, they cannot be taken by the public, or damaged in the construction of other sewers by the municipality without compensation to such private owners, since such private sewers and drains are viewed as property within the meaning of the constitutional provisions relating to the exercise of eminent domain.

It must be remembered that the constitutional prohibition is against the taking of *property* and since there is no limitation on the type of property interdicted by the constitutional provision, it means every type of property.

In 2 Nichols, Eminent Domain sec. 5.85(4) (1963), it is provided:

> There is nothing in the nature of rails, pipes and wires that are usually laid in public ways that deprives them of complete constitutional protection when they are maintained in other places. Private sewers in a private street are private property. Water pipes lawfully established in private land remain under constitutional protection after the strip of land in which they are laid has become a public highway.

■ It has been held repeatedly in this State that unless the legal remedy, that is the remedy at law, is inadequate, a property owner's cause of action in a condemnation situation is exclusively in the law court as opposed to a court of equity. *Fritts v. Leech,* 201 Tenn. 18, 296 S.W.2d 834 (1956); *Hombra v. Smith,* 159 Tenn. 308, 17 S.W.2d 921 (1929); *Armstrong v. Illinois Cent. R. R. Co.,* 153 Tenn. 283, 282 S.W. 382 (1926); *Tennessee, Coal, Iron & R. R. Co. v. Paint Rock Flume & Transp. Co.,* 128 Tenn. 277, 160 S.W. 522 (1913); *Doty v. American Tel. & Tel. Co.,* 123 Tenn. 329, 130 S.W. 1053 (1910); *Scruggs v. Town of Sweetwater,* 29 Tenn.App. 357, 196 S.W.2d 717 (1949); *Georgia Industrial Realty Co. v. City of Chattanooga,* 163 Tenn. 435, 43 S.W.2d 490 (1931).

An analysis of some of these cases may be helpful. In *Fritts v. Leech,* supra, it was held that an ejectment suit could not be maintained against the state, nor could a suit be maintained in the nature of a mandamus to force the state to proceed according to the eminent domain statute, where the state was dumping rock on the complainant's property; the complainant must proceed under the reverse condemnation section. In *Hombra v. Smith,* supra, a suit purporting to be a suit to try title was held to be essentially a condemnation proceeding, and must be tried in a court of law. In *Tennessee, Coal, Iron & R. R. Co. v. Paint Rock Flume & Transp. Co.,* supra, an injunction to restrain defendant's putting a flume across plaintiff's land was held not available, that plaintiff's exclusive remedy was under the reverse condemnation statute.

■ The foregoing cases indicate that an injunction, such as the complainants here seek, to restrain the city's going on the land and taking and using the sewer and

water lines would not be available. An additional reason why an injunction to restrain this "trespass" would not be available is that the municipality has in the first instance a *right* to take over this property under its eminent domain powers. Contrary to this point of view, however, is the case of *Gunn v. City of Versailles,* 330 S.W.2d 257 (Mo.App. 1959), a Missouri case, wherein it was held that if the city attempted to hook on to certain private sewer lines, this was an appropriation of property that *could* be enjoined until the city initiated proper condemnation proceedings. It was held that this remedy was available in this instance without regard to whether the property owner had an adequate remedy at law. Though there is no Tennessee decision directly in point under these facts, it appears from the cases above that Tennessee courts would not subscribe to this view.

█ Despite the fact that complainants may have an adequate remedy at law, they claim that chancery has jurisdiction because they are suing for unjust enrichment and conversion of the sewer and water lines. Regardless of the name applied to the cause, it is still one for unliquidated damages for injuries to property not resulting from a breach of oral or written contract, which are excluded from concurrent chancery jurisdiction in T.C.A. sec. 16-602. This statute was construed in the case of *Rhea v. Hooper,* 73 Tenn. 390 (1880), wherein it was held that chancery has no jurisdiction over a suit for unliquidated damages for injury to land and a ferry caused by defendant's building of a bridge, in spite of the fact that complainant understood that the defendant would compensate him for the loss of his ferry.

It is, in fact, questionable whether complainants have a cause of action for unjust enrichment *at all.* In *Cline v.*

*Red Bank Utility District,* 194 Tenn. 255, 250 S.W.2d 362 (1952), it was held that where complainant tapped on her private sewer lines, built to serve several pieces of private property, with trunk lines of a county utility district, she was *not* entitled to reimbursement of her expenses from the utility district, either on the basis of unjust enrichment or conversion—since she in fact was the party enriched:

> Considering further the question of enrichment we think that the complainant's property increased in value as a result of this sewer construction. * * *
>
> If Mrs. Cline's property increased in value, due to this desirable improvement, her right to reimbursement for it is wholly without reason.
>
> Inasmuch as complainant's property was enriched by her own voluntary act in building a private sewer line, and connecting it with the defendant's system, it cannot be said as a matter of law that the Utility District is liable to the complainant upon the theory that there has been a conversion of the property. 194 Tenn. at 260-261, 250 S.W.2d at 364.

■ This, of course, was a question of damages, and if complainants in the case at bar cannot prove damages, it would make no difference whether their cause of action was in quasi contract or under the reverse condemnation statute. Quasi contract (or unjust enrichment) is one of those remedies properly called equitable and cognizable in chancery under its inherent jurisdiction, as apart from that given it in T.C.A. sec. 16-602; and if the remedy at law is adequate, as it unquestionably is in the instant case, the chancellor did not err in refusing to take jurisdiction.

Finally, complainants claim chancery jurisdiction because they seek a declaration of rights. Apparently, the gist of this prayer is that they seek a declaratory judgment, as authorized by T.C.A. sec. 23-1102. A declaratory judgment is proper in chancery, but only if chancery originally could have entertained a suit of the same subject matter. Gibson, Suits in Chancery sec. 36, n. 62 (5th ed. 1955). Since chancery does not have jurisdiction of the complainants' suit under any of their theories—injunction, unjust enrichment, conversion—it cannot take jurisdiction to enter a declaratory judgment.

The complainants rely on the case of *Evans v. Wheeler*, 209 Tenn. 40, 348 S.W.2d 500 (1961), for the rule that if chancery takes jurisdiction over some portion or feature of a controversy, even though eminent domain jurisdiction is not in chancery, it may retain jurisdiction for the purpose of assessing damages "in so far as the case turned into eminent domain proceedings." 209 Tenn. at 44, 348 S.W.2d at 502. This case, as well as the proposition it supports generally, is only applicable where the chancellor has *taken* jurisdiction for some reason. In the instant case, jurisdiction was never taken at all and to the contrary it was refused.

For the foregoing reasons, the complaint of the Zirkles states no cause of action of which equity has statutory jurisdiction, nor does it state a case of inherent jurisdiction since there is an adequate remedy at law. The action of the chancellor in sustaining the defendant's demurrer is affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.