IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 19, 2022 Session

## FRIENDSHIP WATER CO. V. CITY OF FRIENDSHIP, TENNESSEE

**Appeal from the Circuit Court for Crockett County**
**No. 2018-CV-3459  Clayburn Peeples, Judge**

_____

### No. W2021-00659-COA-R9-CV

_____

This is an interlocutory appeal considered pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.  Specifically at issue is the trial court's ruling that a contract entered into between the parties is valid and enforceable.  The City of Friendship insists that the contract at issue, which involves its purchase of a water distribution system, is void due to the operation of the Municipal Purchasing Law of 1983, Tenn. Code Ann. § 6-56-301 et seq.  For the specific reasons stated herein, we respectfully reject the City's argument and affirm the trial court's holding that the contract at issue is enforceable.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

S. Leo Arnold and Matthew W. Willis, Dyersburg, Tennessee, for the appellant, City of Friendship.

James S. Wilder, III, Christine A. Coronado, and Becky Dykes Bartell, Dyersburg, Tennessee, for the appellee, Friendship Water Co.

### OPINION

### BACKGROUND AND PROCEDURAL HISTORY[1]

---

[1] The order at issue in this appeal was entered in the context of summary judgment proceedings. Some of the facts established at summary judgment were "[a]dmitted for [p]urposes of the pending [m]otion . . . [o]nly."

This case concerns the enforceability of a contract entered into over three decades ago by the Friendship Water Co. ("the Company") and the City of Friendship, Tennessee ("the City"). The contract at issue, which is titled "Agreement for Purchase and Sale" and dated November 6, 1989, recites that "Company desires to sell and City desires to purchase Company's [water] distribution system together with three (3) tracts of real property . . . owned by Company and more particularly described on Exhibits A, B and C attached hereto for the consideration and under the terms and conditions hereinafter set forth." The contract then goes on to provide that:

Now, therefore, for and in consideration of the undertakings and obligations of City and Company set forth hereinbelow, the parties do hereby mutually agree as follows:

1. Company agrees to sell and City agrees to purchase Company's distribution system which includes all underground water mains and a steel water storage tank of approximately 150,000 gallons but excludes Company's pumping system which shall remain an asset of Company. Company's water mains begin at Company's master meter and continue throughout the city limits of the City of Friendship but do not include any customer service lines which are owned by individual customers.

2. City agrees to pay Company the sum of $13,500.00 for the distribution system and three (3) Lots. Payment shall be in cash at closing.

3. City agrees to purchase Water from Company for a period of ninety-nine (99) years from closing. City further agrees that during that period of time it will purchase Water from no other source nor will it provide its own pumping facility so long as Company provides Water to City. For purposes of this Agreement, Water shall be defined as Water in its natural state together with the addition of such amounts of chlorine as may now or hereafter be required by the Tennessee Department of Health and Environment. Any other treatment which may be required by any governmental authority shall be the responsibility of City and shall be applied to the Water by City after the Water has passed through Company's master meter.

. . . .

5. During the ninety-nine (99) year period, Company agrees to pay all of the cost of pumping Water to Company's master meter only including, but not limited to, all labor and electricity for the operation of the pumps, product liability insurance premiums, governmental taxes on pumping facilities and equipment, chlorine, water analysis, office expense, and water operator

licenses and dues. Company will maintain and/or replace the wells and pumps as necessary to provide Water to City so long as it is the owner of the pumping facilities.

Prior to the approval of the contract for purchase and sale by the Board of Mayor and Aldermen, numerous proposals and plans had been pursued and considered regarding the operation of waterworks in the City, and included the participation of the Comptroller of the Treasury, the State Director of Local Finance, and the State Attorney General. The parties' dealings under their contract proceeded without incident for many years, and in 2014, they specifically executed an addendum to adjust payment rates. Upon testing, in August 2016, however, a contaminant known as tetrachloroethylene was detected in the water supply. The following year, on July 28, 2017, the Company was notified through counsel that the City deemed the Company to be in breach of their contract. The City took steps to develop its own wells, and by letter dated September 6, 2017, it was advised by the Tennessee Department of Environment and Conservation that its wells were approved for use. The City then terminated its contract with the Company on September 11, 2017.[2] The present litigation later commenced on March 1, 2018, when the Company filed a complaint against the City in the Crockett County Circuit Court ("the trial court"), asserting, among other things, a claim for breach of contract.

As discussed in greater detail below, the City has argued in this case that the parties' contract is void, specifically complaining that the contract was entered into in violation of the Municipal Purchasing Law of 1983 ("the Purchasing Act" or "the Act"), Tenn. Code Ann. § 6-56-301 et seq. Following the Company's filing of a motion for partial summary judgment with respect to certain issues, the trial court ruled in a July 22, 2019, order that the contract between the parties *is* legal, contrary to the position taken by the City. An interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure ensued soon thereafter, but when this Court reviewed the matter, we concluded that the prior appeal had been "improvidently granted as framed" and further observed that the trial court's order did not provide a satisfactory explanation relative to its conclusion. *Friendship Water Co. v. City of Friendship*, No. W2019-02039-COA-R9-CV, 2020 WL 4919796, at *3-4 (Tenn. Ct. App. Aug. 21, 2020). We therefore dismissed the appeal and cautioned the trial court that, on remand, it "should endeavor to more clearly articulate the legal grounds upon which it granted the motion, lest any future appeal . . . be potentially hindered by the lack of explanation exhibited by the order in its current form." *Id.* at *4-5.

---

[2] Counsel for the City stated at oral argument that the City was "between a rock and a hard spot" at the point in time the contract was terminated, as counsel acknowledged that the City at the time had no other ability to distribute water other than through the distribution system purchased pursuant to the parties' contract.

On remand, the Company filed an amended motion for partial summary judgment, arguing that the parties' contract was valid and enforceable. In connection therewith, the Company specifically confronted the City's position in this case that the parties' contract was formed in violation of the Purchasing Act. Pursuant to the terms of the Purchasing Act, assuming it applies, "all purchases and leases or lease-purchase agreements shall be made or entered into only after public advertisement and competitive bid." Tenn. Code Ann. § 6-56-304. The Company offered a number of specific arguments in support of its position that the Purchasing Act posed no impediment to the contract in this case, including contending that the contract fell within the purview of certain exceptions under the Purchasing Act. The City opposed the Company's position and argued to the trial court that the parties' contract was void due to a lack of competitive bidding. In support, the City noted that it had not advertised or solicited bids as allegedly required of it under the Purchasing Act.

The trial court subsequently entered an order in favor of the Company regarding the amended motion for partial summary judgment, concluding in relevant part as follows:

3. The Cou[r]t finds that the 1989 Agreement was a valid and enforceable contract.

4. The parties agree that the 1989 Agreement is a facially valid contract.

5. The Cou[r]t finds that the City of Friendship had the capacity, power and authority to enter into the Agreement with the Company.

6. Pursuant to TCA § 7-35-401(a) a City is "authorized and empowered to own, acquire, construct, extend, equip, operate and maintain within or without the corporate limits of such city or town a waterworks system or a sewerage system, to provide water or sewerage service and to charge for such service.["] The 1989 Agreement contains the essential elements of a valid contract under Tennessee law.

. . . .

9. The Company sold its distribution lines, real property and water storage tanks in consideration for an exclusive right to sell water to the City for 99 years.

. . . .

11. There is no requirement in the Waterworks Statutes, TCA §§ 7-35-401 et[] al. for the City to solicit bids when acquiring a waterworks system. Specifically, TCA § 7-35-423 states that it is an "additional and alternate

- 4 -

method for the acquisition of waterworks or a sewerage system by an incorporated city or town and does not include, amend, alter or repeal any other statute."  Both *Zirkle v. Kingston*, 217 Tenn. 210 (Tenn. 1965) and *Selmer v. Allen*, 166 Tenn. 476 (Tenn. 1933) hold that TCA § 7-35-423 is constitutional and that the Waterworks statutes are complete within that specific section of code.  Therefore, the Municipal Purchasing Act does not apply to the acquisition of a waterworks system, and does not apply to the 1989 Agreement that is the subject of this case.  (TR 683-685)

Regarding the issue of exceptions under the Purchasing Act, the trial court further stated as follows:

13.  TCA § 6-56-304(2) provides that all purchases shall be made or entered into only after public advertisement or competitive bid except when the goods may not be procured by competitive means because of the existence of a single source of supply.  At the time of the 1989 Agreement, the Company was the single source of supply of a waterworks system for the City, and therefore this Agreement is an exception to the Municipal Purchasing Act and is a valid and enforceable contract.

14.  As to the question of competitive bidding, TCA § 6-56-304(2) provides that all purchases shall be made or entered into only after public advertisement or competitive bid except when the goods may not be procured by competitive means because of the existence of a proprietary product.  The court finds that at the time this contract was entered into, the distribution system purchased by the City was the proprietary property of Friendship Water Company, and that as a result, the 1989 Agreement is an exception to the Municipal Purchasing Act and is a valid and enforceable contract.  Furthermore, TCA § 6-56-304(5) exempts "purchases, leases, or lease-purchases of real property" from the requirements of the Municipal Purchasing Act.  The 1989 Agreement involved the sale of three tracts of real property, owned by the Company, to the City.  The City purchased three parcels of real estate from the Company.  The Court finds that the purchase and sale of the real estate was an essential element of the 1989 Agreement, and therefore cannot be severed from the other portions of the contract.  This sale of the real property was a significant consideration for the Company's 99 year exclusive lease to sell water to the City, and because of this also, the 1989 Agreement was an exception to the Municipal Purchasing Act, and is a valid and enforceable contract.

The City again sought to pursue an interlocutory appeal, and the trial court later entered an order to allow it, specifically opining that an interlocutory appeal "would best serve the economic interests of the parties, and the Court."  Following the subsequent filing

of an application in this Court by the City seeking review under Rule 9 of the Tennessee Rules of Appellate Procedure, we granted an interlocutory appeal limited to the following issue: "Whether the contract between the parties is legally void as violative of the competitive bidding statutes codified at Tenn. Code Ann. § 6-56-302 and Tenn. Code Ann. § 6-56-304, or is a valid and enforceable contract."

## STANDARD OF REVIEW

The issue before us was decided by the trial court in connection with a motion for partial summary judgment. "[A]ppellate review of a trial court's summary judgment decision is de novo without a presumption of correctness." *Regions Bank v. Prager*, 625 S.W.3d 842, 849 (Tenn. 2021).

## DISCUSSION

The City's position in this case is that, notwithstanding its entry into the contract at issue and performance under it for several decades, the contract is void and unenforceable due to the operation of the Purchasing Act. As noted earlier, the Purchasing Act generally requires public advertisement and competitive bidding for municipal purchases, Tenn. Code Ann. § 6-56-304, and the City notes that it entered into the contract at issue without public advertisement or bidding. The Company, on the other hand, argues that the parties' agreement was not made in violation of competitive bidding requirements. It argues that the contract was "made within the authority of the Waterworks statute, TCA § 7-35-401 *et*[] *seq.,* which does not require the City to advertise or solicit bids in its effectuation of establishing a waterworks system." It accordingly argues that the Purchasing Act does not even technically apply to the parties' contract. Independent of its specific reliance on the provisions found at Tennessee Code Annotated section 7-35-401 et seq. (generally referenced herein as "the Waterworks Statute"), the Company further argues that multiple exceptions under the Purchasing Act apply to the agreement at issue. The trial court's order reflects that it found favor in the Company's various arguments, stating, as we quoted previously, that the "Municipal Purchasing Act does not apply to the acquisition of a waterworks system," while at the same time concluding that the parties' contract was excepted from the Purchasing Act for various reasons. The City challenges each of these holdings on appeal. The Company and City have also offered arguments concerning the potential relevance that the provisions in the Revenue Bond Law, Tennessee Code Annotated section 7-34-101 et seq., have to the defined issue on appeal.[3] Whereas the City maintains its position that the contract here is void due to the operation of the Purchasing

---

[3] These arguments were offered following this Court's entry of an order wherein we stated that "in this appeal which concerns the powers of a municipality in contracting for a water distribution system, it is in the public interest that the effect of the Revenue Bond Law be considered." We noted therein that "the potential applicability of the Revenue Bond Law's provisions, like the [Company's] argument under Tennessee Code Annotated section 7-35-401 et seq., is subsumed under the general issue for which we granted review."

Act, the Company argues that the Revenue Bond Law supports its position that the entry into the contract at issue was not encumbered by the advertising and bidding requirements cited by the City.

We will address each of the parties' arguments as is necessary to the disposition of this appeal, and we begin by focusing on the Company's reliance on the Waterworks Statute and the Revenue Bond Law.[4]  At the time of the execution of the parties' contract, the Waterworks Statute provided in relevant part as follows:

> Every incorporated city and town in this state is authorized and empowered to own, acquire, construct, extend, equip, operate and maintain within and/or without the corporate limits of such city or town a waterworks system and/or a sewerage system, to provide water and/or sewerage service and to charge for such service.

Tenn. Code Ann. § 7-35-401(a).  As defined by the statute, a "waterworks system" included "all or any part of the following: source of supply, pumping facilities, purification works, storage facilities and distribution system, together with all necessary parts and appurtenances for proper operation."  Tenn. Code Ann. § 7-35-401(b)(2).

The Waterworks Statute further stated that:

> This part shall be deemed to create an additional and alternate method for the acquisition of waterworks and/or sewerage system by any incorporated city or town, and shall not be deemed to include, amend, alter or repeal any other statute.  No proceedings shall be required for the acquisition of any waterworks and/or sewerage system hereunder, or for the issuance of any bonds hereunder, except such as are provided by this part, any provision in the general or private laws of the state of Tennessee or charter of any city or town to the contrary notwithstanding.

Tenn. Code Ann. § 7-35-432.

The Company reasons that because the Waterworks Statute itself did not explicitly require the City to advertise or solicit bids to effectuate the purchase of a waterworks system, the parties' contract was "not made in violation of the competitive bidding statutes and is not void as argued by the City."  Moreover, as the Company has noted, the trial court's ruling referenced prior reported case law for the proposition that "the Waterworks statutes are complete within that specific section of code."  In one of the relied-upon cases, the Tennessee Supreme Court had remarked that the Waterworks Statute was "not

---

[4] Arguments which are not expressly resolved are pretermitted in light of the specific discussion contained herein.

- 7 -

dependent upon any other statute." *Selmer v. Allen*, 63 S.W.2d 663, 664 (Tenn. 1933). The City argues, however, that, "[w]hen read correctly, [the Waterworks Statute] does nothing more than give a waterworks or sewage board the authority to function as otherwise allowed by, or restricted by, the prevailing statutes of the State of Tennessee, including [the Purchasing Act]."

Assuming *arguendo* that the City is correct as to this precise question regarding the narrow interplay between the Waterworks Statute and the Purchasing Act, other statutory authority within the Tennessee Code indicates that the purchase of a water distribution system is not subject to the competitive bidding requirements of the Act. Indeed, irrespective of the impact of the Waterworks Statute specifically vis-à-vis the Purchasing Act, the Revenue Bond Law clearly operates in our view to permit a municipality to acquire a waterworks system in a manner that is not encumbered by the complained-of bidding and advertising requirements.

The Revenue Bond Law, which is in the chapter immediately preceding the Waterworks Statute in the Tennessee Code, provided in relevant part as follows at the time the parties' 1989 contract was executed:

> In addition to powers which it may now have, **any municipality shall have power under this chapter**:
> **(1) To construct, acquire by gift, purchase, or the exercise of the right of eminent domain, reconstruct, improve, better or extend any public works**, within or without the municipality, or partially within or partially without the municipality, and to acquire by gift, purchase, or the exercise of the right of eminent domain, lands or rights in land or water rights in connection therewith[.]

Tenn. Code Ann. § 7-34-104(1) (emphasis added). "Public works," as then-defined, meant:

> [A]ny one (1) or combination of two (2) or more of the following: water, sewerage, gas or electric heat, light or power works, plants and systems or parking facilities, together with all parts thereof and appurtenances thereto including, but not limited to, supply and distribution systems, reservoirs, dams, sewage treatment and disposal works and generating plants.

Tenn. Code Ann. § 7-34-102(3). Further, and as is of especial importance here, the Revenue Bond Law stated as follows concerning its relation to other legal authority:

> The powers conferred by this chapter shall be in addition and supplemental to, and the limitations imposed by this chapter shall not affect, the powers conferred by any other general, special or local law. **Public works may be acquired, purchased**, constructed, reconstructed, improved, bettered, and

extended, and bonds may be issued under this chapter for such purposes, notwithstanding that any general, special or local law may provide for the acquisition, purchase, construction, reconstruction, improvement, betterment and extension of a like public works, or the issuance of bonds for like purposes, and **without regard to the requirements, restrictions, limitations or other provisions contained in any other general, special or local law**, including but not limited to, any requirement for the approval by the voters of any municipality.

Tenn. Code Ann. § 7-34-118 (emphasis added).

As we construe it, the above language from Tennessee Code Annotated section 7-34-118 appears to provide a clear signal that "requirements, restrictions, [and] limitations," such as those at issue in the Purchasing Act, do not circumscribe or govern the acquisition or purchases of public works. Beyond the clarity of the plain language utilized in the statute, we note that a like understanding has previously been accorded to similar statutory language in reference to competitive bidding laws. *See Shankle v. Bedford Cty. Bd. of Educ.*, No. 01-A-01-9609-CH-00387, 1997 WL 83662, at *5 (Tenn. Ct. App. Feb. 28, 1997) (discussing Tennessee Code Annotated section 12-10-122[5] and holding that the provision, with respect to the "acquisition, purchase, construction, reconstruction, improvement, betterment, or extension of projects," "clearly exempts public building authorities from any other general, special, or local laws including competitive bidding laws").

The City argues that the authority in the Revenue Bond Law cannot be considered to apply here, however, because, among other things, "[t]he contract . . . at issue was not funded in any manner which implicated the Revenue Bond Act." In support of this position, the City argues that the transaction was "funded through a loan secured from a private bank." We agree with the Company that the City's argument to this end is without merit, as we fail to see how the provisions in the Revenue Bond Law can only be implicated when bonds have been issued. Section 118 contains specific language stating that "bonds *may* be issued under this chapter" for certain purposes municipalities are empowered to carry out under the statute. Tenn. Code Ann. § 7-34-118 (emphasis added). It does not

---

[5] As quoted in *Shankle*, this statute reads in part as follows:

Projects may be acquired, purchased, constructed, reconstructed, improved, bettered and extended and bonds may be issued under this chapter for such purposes, notwithstanding that any other general, special or local law may provide for the acquisition, purchase, construction, reconstruction, improvement, betterment and extension of a like project, or the issuance of bonds for like purposes, and without regard to the requirements, restrictions, limitations or other provisions contained in any other general, special or local law.

state that they *must* be.[6]  Moreover, we observe that the Office of the Attorney General has previously opined that the Revenue Bond Law "generally [does not] require[] a municipality to issue bonds in order to be able to exercise the statutory powers."  Tenn. Op. Atty Gen., No. 92-71, 1992 WL 545048, at *2 (Dec. 28, 1992).

Beyond the above considerations, the Company has argued, as noted previously, that various exceptions under the Purchasing Act actually apply in this case.  At the time the parties' contract was entered into, the Purchasing Act specifically excepted, among other things, the following from public advertisement and competitive bidding:

> (2) **Any goods or services which may not be procured by competitive means because of the existence of a *single source of supply* or because of a *proprietary product*.**  A record of all such sole source or proprietary purchases shall be made by the person or body authorizing such purchases and shall specify the amount paid, the items purchased, and from whom the purchase was made.  A report of such sole source or proprietary purchases shall be made as soon as possible to the municipal governing body and the chief executive officer of the municipality and shall include all items of information as required for the record.
>
> . . . .
>
> (5) Purchases, leases, or lease-purchases of ***real property***[.]

Tenn. Code Ann. § 6-56-304 (emphases added).

As is evident from our earlier discussion of the contract, the primary focus and purpose of the parties' agreement, the "Agreement for Purchase and Sale," was on the acquisition of a water distribution system and associated real property by the City, as the contract began by reciting that "Company desires to sell and City desires to purchase Company's [water] distribution system together with three (3) tracts of real property . . . owned by Company and more particularly described on Exhibits A, B and C attached hereto *for the consideration and under the terms and conditions hereinafter set forth*." (emphasis added)  In addition to the fact that the acquisition of the distribution system was not encumbered by the Purchasing Act for the reasons previously stated herein, it is clear that the purchase of the real property also did not necessitate any competitive bidding per the codified exception at Tennessee Code Annotated section 6-56-304(5).  Thus, the primary purpose for which the agreement was entered into, i.e., the acquisition of waterworks and associated real property, did not require any competitive bidding

---

[6] The Company has also noted that the statute actually references the ability to "acquire by gift," Tenn. Code Ann. § 7-34-104(1), an action and power that obviously does not entail financing given what a gift connotes.

- 10 -

concerning either aspect of the City's objective, and the contract was financially structured to provide consideration for the City's purchases by (1) initial monetary consideration at closing and (2) additional consideration in the form of an agreement to purchase water. Because we conclude that competitive bidding was not required given the predominant purpose of the contract, we respectfully reject the City's argument on appeal that the contract is void and therefore affirm the trial court's judgment that the contract was valid when it was entered into by the parties.

## CONCLUSION

For the specific reasons discussed above, we hold that the parties' contract was a valid agreement that the parties could enter into in the absence of competitive bidding and accordingly affirm the trial court's judgment on that question. Given the limited scope of this interlocutory appeal, we express no opinion regarding other questions and concerns that are at issue in this litigation. The case is hereby remanded to the trial court for further proceedings as may be necessary and are consistent with this Opinion.

_s/ Arnold B. Goldin_
ARNOLD B. GOLDIN, JUDGE

- 11 -