CITY OF CHARLESTON et al.

*v.*

SAM AILEY et ux.

CITY OF CHARLESTON et al.

*v.*

MRS. ANNIE MILLER SWANSON.

CITY OF CHARLESTON et al.

*v.*

JESS LYLE et ux.

CITY OF CHARLESTON et al.

*v.*

WALTER BETTIS et ux.

357 S.W.2d 339.

(*Knoxville,* September Term, 1961.)

(May Session, 1962.)

Opinion filed May 4, 1962.

W. K. Fillauer, V. F. Carmichael, Cleveland, for City of Charleston and Board of Mayor and Commissioners of the City of Charleston.

James G. Nave, Cleveland, for Bradley County.

George E. Westerberg, Mayfield & Mayfield, Cleveland for Sam Ailey et ux., Mrs. Annie Miller Swanson, Jess Lyle et ux., and Walter Bettis et ux.

MR. JUSTICE FELTS delivered the opinion of the Court.

The first three of these cases are before us on appeals in error, and the last one is upon writ of error. We think respondents' motion to dismiss this writ is not well taken, because no appeal having been perfected in this case, the writ of error was available to bring up the case; and the motion is overruled. Since all four of the cases involve the same questions, they will be disposed of in this one opinion.

These questions concern the liability of Bradley County and the City of Charleston (and the individuals named as its Board of Mayor and Commissioners) to owners of land within the City for the value of such lands taken for the purpose of a highway, and damages incident to such taking, and on which the State Department of Highways constructed a new highway leading from State Highway No. 2 (U. S. Highway 11) in Charleston in a westerly direction to the Mount Harmony Schoolhouse in Bradley County.

These questions were raised by demurrers by the County and by the City to the declarations (each of them being in substance the same) in these suits by the landowners against the County and the City to recover for the value of the lands taken and the damages incident to such taking, for the highway constructed by the Highway Department.

The City's demurrers were sustained and the suits dismissed as to it. The County's demurrers were overruled, and the County filed certain special pleas which were stricken, and a plea of the general issue. Judgments were entered against the County for the landowners and the County has appealed in error (in the first three cases, and by writ of error in the other one), limiting its appeal to the technical record presenting the legal questions made by the overruling of the demurrers and the striking of its special pleas. Plaintiffs below appealed from the Trial Judge's action sustaining the City's demurrers and dismissing the suits as to it.

We state so much of the facts averred in the declarations as seem material to the legal questions presented by the respective assignments of error of the several parties.

■ *"Prior* to the incorporation of the City of Charleston," Bradley County, through its Quarterly Court, entered into an agreement with the Department of Highways and Public Works of Tennessee to provide rights of way for this highway, designated as Project No. 5-4317(a) providing for a new roadway "from U. S. Highway 11 in Charleston to the Mount Harmony Schoolhouse, *generally following Cass Street in Charleston* and the lower River Road of Bradley County" (italics ours).

Under this agreement, "Bradley County was to provide necessary rights of way, and the State of Tennessee was to construct the road." This agreement was duly ratified by resolution of the Quarterly Court. Thereafter, the City of Charleston was incorporated. It then recognized its obligation to provide such rights of way within its corporate limits for this highway; but since it had not collected any taxes or received any revenues, it did not have the funds necessary to purchase the rights of way.

After some negotiation, Bradley County and the City of Charleston entered into an agreement by which the County agreed to loan to the City the funds for the purchase of such rights of way and for payment of costs and damages incident thereto; and the City promised to repay the County such sums over a period of time from its share of the gasoline tax and sales tax to be received from the State. This agreement was likewise duly ratified by resolution of the County Court.

It appears that, pursuant to its agreement with Bradley County "to provide the necessary rights of way" for this highway, including the part *"following Cass Street in Charleston,"* the State Highway Department, by its agents and employees, entered upon and took the land, and constructed the highway thereon. But no compensation has been paid to these plaintiff landowners for the lands taken for the damages incident to such taking and the construction of the highway.

In these circumstances, it seems clear that the County brought itself within our statutes and became liable to the landowners for the taking of the land for

the rights of way and the incidental damages thereto. T.C.A. secs. 54-506, 54-510, 54-511, 54-512.

These statutes have been construed and applied in numerous cases, all of which hold that the County in which the highway is constructed is liable for the value of the land taken for highway purposes and for damages incident to the construction of such highway by the State Highway Department.

Some of such cases are: *State Highway Dept. v. Mitchell's Heirs,* 142 Tenn. 58, 216 S.W. 336; *Marion County v. Tydings,* 169 Tenn. 286, 86 S.W.2d 565; *Stubblefield v. Warren County,* 170 Tenn. 211, 93 S.W.2d 1269; *Unicoi County et al. v. Barnett,* 181 Tenn. 565, 182 S.W.2d 865; *Hollers et al. v. Campbell County,* 192 Tenn. 442, 241 S.W.2d 523; *Brooksbank v. Leech,* 206 Tenn. 176, 332 S.W.2d 210.

In *Marion County v. Tydings,* supra, it was pointed out that the County was liable to the landowner for the value of land taken for highway purposes by the State Highway Department, though the County had nothing to do with the taking or with the purchase of the rights of way.

In *Brooksbank v. Leech,* supra, Mr. Justice Burnett pointed out that ''the County is liable to the landowner for the damages to property taken by the State regardless of the fact of whether or not the County was interested in the road being built through that County and when the road was taken for State highway purposes alone'' (206 Tenn. 181, 332 S.W.2d 212).

Under these authorities, it would seem quite clear that when, before the town had been incorporated, the County agreed with the Highway Department to acquire the

rights of way for this highway project, including those within the limits of Charleston, and when the Highway Department constructed the highway, the County became liable to the landowners for the value of the land taken with the incidental damages thereto.

■ We think the fact that the City of Charleston was incorporated as a municipality after the County had assumed this obligation to acquire the rights of way, but before the highway had been constructed, did not release the County from this obligation or liability to these landowners; and that the matters the County sought to present under its special pleas, to the effect that it had nothing to do with the taking of these rights of way, were wholly immaterial to the question of the County's liability.

We think that *McDonald v. Scott County*, 169 Tenn. 374, 87 S.W.2d 1019, relied on by the County, is not in point, but differs decisively in its facts from the case before us.

■ It would also seem clear that when the City of Charleston, after it had been incorporated, recognized its obligation to acquire these rights of way for the highway, and agreed with the County to do so upon the terms stated, the City became liable to these landowners for the value of the lands taken and damages incident to such taking.

Our statute (T.C.A. sec. 54-531) authorizes the State Highway Department to construct, improve and maintain streets in municipalities over which the State highway is routed, and to enter into contracts with such municipalities relative to the acquisition of rights of way

for such streets. Also, T.C.A. sec. 6-1012 makes such municipality liable to any landowner for damages caused by change of grade of a highway or street, or "other acts done for the purpose of improving or repairing such ways."

So, we have numerous cases holding a city or municipality liable to a landowner for the taking of his property for the purpose of improving or repairing a street or highway within such city. *Knoxville v. Harth,* 105 Tenn. 436, 58 S.W. 650, 80 Am.St.Rep. 901; *Knoxville v. Hunt,* 156 Tenn. 7, 299 S.W. 789; *Wood v. Foster & Creighton Co.,* 191 Tenn. 478, 235 S.W.2d 1.

In *Wood v. Foster & Creighton Co.,* supra, Mr. Justice Burnett, speaking for the Court, said:

"The obligation to secure these rights of way and the resulting damage to the property for property taken or for ingress and egress to the property by reason of this improvement was an obligation of the City. Therefore we think that clearly under Code Section 3404 [T.C.A. sec. 6-1012], above referred to, the City is obligated to the property owner for the resulting damage."

So, on the special facts of this case, we think the County and the City are both liable to these landowners whose land was taken for the construction of the highway. Of course, these owners cannot collect for damages from both the County and the City, but we think they may look to both, though they are entitled to but one satisfaction. The question of the rights of the City and the County as between themselves is not before us, and nothing here said is intended to affect that question.

Other questions have been raised by the assignments of error. We have fully considered all of them and find no merit in any of them. We think they do not require further discussion.

It results that the judgments of the Circuit Court against the County in favor of the several plaintiffs below will be affirmed, the judgment of that Court sustaining the demurrers of the City and dismissing the suits as to it are reversed, and the cases will be remanded to the Circuit Court for further proceedings not inconsistent with this opinion.