Knox County, Tenn., Petitioner,

*v.*

J. C. Moncier, Respondent.

455 S.W.2d 153.

(*Knoxville*, September Term, 1969.)

Opinion filed February 16, 1970.

Opinion on Petition to Rehear filed May 18, 1970.

EARL S. AILOR, ASQUITH, AILOR & JONES, of counsel, Knoxville; and DAVID M. PACK, Attorney General, of counsel, Nashville, for petitioner.

BERNARD E. BERNSTEIN, Knoxville, for respondent.

Mr. Special Justice Jenkins delivered the opinion of the Court.

This is an inverse condemnation suit whereby the appellee, J. C. Moncier, sued Knox County, claiming damages to his property by flood waters allegedly caused by the construction of an interstate highway, which changed the natural drainage of the watershed area. The Circuit Court rendered a judgment in the amount of $15,000.00 in favor of J. C. Moncier. The County appealed from his adverse judgment to the Court of Appeals. That Court affirmed the Circuit Court.

The parties, for the purpose of clarity, will be hereafter referred to as plaintiff or Moncier, and as defendant, County or State.

The principal contention of the County is that plaintiff's suit is barred by the one year statute of limitations, as it is set out in T.C.A. Section 23-1424.

Plaintiff owns a two-acre tract of land approximately six hundred feet North of Interstate 40 in the eastern part of Knoxville. Prior to the construction of the interstate or plaintiff's warehouse, the natural drainage of approximately twenty-three to twenty-four acres was toward plaintiff's property, a part of which was the low-

est point in the area. At the rear and on the eastern edge of Moncier's property is a sinkhole from which the water drained into an underground cavern.

In 1962, plaintiff decided to construct a warehouse on the higher elevation of his property fronting on Boruff Street. Prior to commencement of the construction of this building a backhoe was used to excavate around the sinkhole, and a catch basin was constructed to aid in discharging the surface water.

Shortly after plaintiff occupied his building in December 1962, grading was commenced on Interstate 40. In March 1963, during a heavy rain, water and mud washed onto the property at such a rate the catch basin could not carry off the flow. The first floor or basement level of the building, along with part of the lot was flooded. Seeking aid, plaintiff immediately contacted the State Highway Department and the contractor building the interstate. After the floodwater receded, the Highway Department came upon the property and reconstructed the catch basin and put in some additional tile.

From the March 1963 flooding until January 1965, some mud and debris washed upon the property, but the building was not flooded. In January 1965, a very heavy rain occurred, and on this occasion the basement of the building was flooded and the water rose above the first floor level.

The record shows that the grading on the interstate was not completed until September 23, 1964, with the pavement and other work being completed at a later date. Moncier testified that from the first flooding in March 1963 until April 1965, he contacted the Highway Department on numerous occasions, and during this period the

State engineers promised to alleviate the conditions which existed. In response to these contacts the Highway Department did, during the first flooding of 1963, place on the property two largs pumps which were operated for twenty-four hours in an effort to draw down the water. Other than pumping and the reconstruction of the catch basin, which was also after the 1963 flooding, neither the Highway Department nor the contractor did anything further other than inspect Moncier's property and confer with him in regard to the water problem.

Plaintiff's declaration alleges that on June 1, 1965, more than one year after the March 1963 flooding but less than a year after the January 1965 flooding, he filed suit in Chancery Court of Knox County, seeking injunctive relief and monetary damages; that the suit was voluntarily dismissed on July 13, 1967, with the present suit being timely instituted under T.C.A. Section 28-106, our saving statute, on July 25, 1967.

The basic question before this Court is whether Moncier's suit was barred by the one year statute of limitations. The decision of this question depends, of course, on whether Moncier's property was taken at some point in time after June 1, 1964, and if Moncier's original action was, in fact, commenced on June 1, 1965, with a voluntary dismissal taken on July 13, 1967, and the present action instituted within one year thereafter. If the above facts are found to exist, then the present suit will fall within our saving statute and the statute of limitations will not be a bar to this action.

In determining what amounts to a "taking" in a case and when the "taking" is complete so as to give the

landowner a cause of action and begin the running of the statute of limitations, the Court must look to the facts in the particular case under consideration. *Davidson County v. Beauchesne* (1955), 39 Tenn.App. 90, 281 S.W. 2d 266. We are of the opinion that the facts here indicate that the "taking" of Moncier's property occurred in January 1965, rather than in March 1963. Significantly, this was within a year of the alleged filing of Moncier's original suit.

■ Although plaintiff's property was damaged during the March 1963 flooding, the evidence would not seem to indicate that such flooding originated from or was caused by the grading being done on the Interstate Highway, because at the time of this first flooding only a small amount of the grading had been done. It is highly improbable that the construction work on the highway had advanced to such a stage from December 1962, to March 1963, that it would cause interference with or divert the natural drainage of water on Moncier's property.

■ The statute of limitations should be applied in such a manner that the landowner will have the one year period within which to bring his suit "after injury or after reasonable notice or knowledge of such injury and damage." *Morgan County v. Neff* (1953), 36 Tenn.App. 407, 256 S.W.2d 61. We would add to this that the landowner should have one year to commence his action after an injury to his property which reasonably appears to him to be a permanent injury rather than a temporary one. Only when the injury is permanent in nature can there be a "taking" within the contemplation of the statute; and until there is a "taking" the statute of limitations does not begin to run.

Plaintiff was justified in believing that no "taking" had occurred until after January 1965. From 1963 until 1965, Moncier discussed the flooding with the State engineers, and he was assured that the problem would be alleviated. In fact, after the March 1963 flooding the State reconstructed the catch basin on Moncier's property. Thus, during this time period, 1963 to 1965, Moncier reasonably assumed that any injury to his land was of a temporary nature. However, after a substantial part of the construction was completed in September 1964, and subsequent flooding occurred in January 1965, plaintiff was then justified in assuming that such flooding constituted a permanent situation and not merely a temporary inconvenience. This was the first time that Moncier could be charged with knowledge that the injury to his property was permanent, thus constituting a "taking."

■ We do not hold that a property owner can sit idly by and wait to commence his suit at any time which is convenient with him, thereby circumventing the purpose of the statute of limitations. What we do hold is that the onus is on the property owner to institute his suit within one year after he realizes or should reasonably realize that his property has sustained an injury which is permanent in nature. At that time the "taking" occurs and the statute of limitations begins to run. In this case the injury which constituted the "taking" took place in January 1965, when the flooding occurred after the grading and a substantial part of the other work on the Interstate were completed.

Since the "taking" occurred in January 1965, and plaintiff alleges that his original action was commenced on June 1, 1965, it would seem that his present suit falls

within the saving statute because it was instituted within one year after the voluntary dismissal of his first action. In such a case the burden of proof is upon the petitioner to show that his present action falls within the saving statute. *East Tennessee Coal Co. v. Daniel* (1897), 100 Tenn. 65, 42 S.W. 1062. The petitioner must prove that his original suit was commenced within one year after the "taking" occurred. Moncier did not carry his burden of proof in this case. Although his petition alleges that his original suit was commenced on June 1, 1965, there was no evidence in the record to support such an allegation.

■ The fact that Moncier might have instituted his original suit in the Chancery Court rather than the Circuit Court will not affect the outcome of this case. Even though the Circuit Court and not the Chancery Court has jurisdiction to try inverse condemnation suits, *Cox v. State* (1965), 217 Tenn. 644, 399 S.W.2d 776, nevertheless, in a case where petitioner prays for equitable relief, by way of injunction, as well as damages, the Chancery Court by acquiring jurisdiction for the equitable relief sought can retain jurisdiction in order to assess damages "insofar as the case (turns) into eminent domain proceedings." *Evans v. Wheeler* (1961), 209 Tenn. 40, 348 S.W.2d 500. Thus, if Moncier, as alleged, did file his first action in Chancery Court this would, nevertheless, toll the running of the statute of limitations. See also *Burns v. Peoples Tel. & Tel. Co.* (1930), 161 Tenn. 382, 33 S.W.2d 76.

The case should be remanded to the Circuit Court to hear proof on the question of whether a suit was filed in Chancery Court on June 1, 1965, seeking injunctive re-

lief and damages. If the Court does find that such a suit was filed then Moncier will be entitled to recover of the defendant the amount which was awarded him as damages by the circuit court.

DYER, CHIEF JUSTICE, and CRESON, JUSTICE, and BOZEMAN, SPECIAL JUSTICE, concur.

McCANLESS, JUSTICE, not participating.

### OPINION ON PETITION TO REHEAR

MR. SPECIAL JUSTICE JENKINS.

Subsequent to the release of the opinion in this case, Knox County filed a petition to rehear. Rule 32 of this Court governs the subject of rehearing and provides:

"A hearing will be refused where no new argument is made and no new authority adduced, and no new material fact is pointed out as overlooked."

█ The purpose of a petition to rehear is not to reargue the case on points already considered by the Court; but rather, to call to the Court's attention some new and decisive authority which it overlooked. However, the issues advanced by Knox County in its petition are the same as those previously raised by it.

Knox County has cited no new authority, nor has it propounded any significant reason which would merit our granting its petition to rehear. Accordingly, the same is denied.

Although Moncier did not file a formal petition to rehear, in his response to Knox County's petition he prayed that our original opinion be modified so as not to place

upon him the burden of proving that his original suit was commenced within one year after the "taking" occurred; and he also requested the Court to award interest from the time of the taking, January 1965, in accordance with our recent opinion in *Sullivan County v. Pope* (1969) 223 Tenn. 575, 448 S.W.2d 666.

In our original opinion we stated that the burden of proof was upon the petitioner, Moncier to show that his present action came within the saving statute, *East Tennessee Coal Co. v. Daniel,* supra; and finding that he did not carry that burden we remanded the case to the Circuit Court for proof on the issue of whether a suit was filed on June 1, 1965. However, after a thorough reexamination of the burden of proof question we have concluded that *East Tennessee Coal Co. v. Daniel* is inapplicable; and that the resolution of the issue should be governed, instead, by *Railroad v. Harris* (1898), 101 Tenn. 527, 47 S.W. 1096.

In *Railroad v. Harris,* the plaintiff alleged that the injury occurred on December 19, 1894; that suit was brought in May 1895; that on April 10, 1896, the suit was dismissed and a subsequent action commenced within sixteen days thereafter. To this declaration the defendant pled the statute of limitations, as Knox County did in the instant case.

This Court sustained the trial court's overruling of the defendant's plea of the statute of limitations:

"The plaintiff in his declaration, anticipating the plea of the statute by defendant, had seen proper specifically to set out these allegations of facts, which, if true, relieved him from its bar by bringing his case within the saving of Sec. 4446 of the * * *. Code (now T.C.A.

Section 28-106). It is true that he might have contented himself with a statement of his cause of action in his declaration, reserving these facts for a replication to the plea of the statute, but we know of no authority which holds that it was essential that he should do so * * *. The averments thus made were not traversed by the defendant. If true, it was immaterial, as was alleged in the plea, that the cause of action occurred more than one year before the institution of the suit; and that they were true, was conclusively admitted, 'for all purposes of that issue,' by the defendant, when it failed to make a denial by plea. Code (Shannon's), Sec. 4631.'' (Now T.C.A. Section 20-923).

As enunciated in *East Tennessee Coal Co. v. Daniel,* when the plaintiff's declaration shows upon its face that the claim sued upon is barred by the statute of limitations, then a plea of the statute interposed by the defendant will shift the burden of producing evidence to the plaintiff who must show that his action falls within the saving statute; i.e., he must prove that his original action was instituted within one year after the taking occurred. However, when the plaintiff, as in the instant case and in *Railroad v. Harris,* anticipates the defendant's plea of the statute, alleges facts in his declaration which would bring his cause of action within the saving statute, and these facts are not specifically denied by the defendant, he is then relieved from the statutory bar and need not produce any proof pertaining thereto. Accordingly, our opinion is modified so as not to require a remand to the Circuit Court on this question.

Relying upon the recent case of *Sullivan County v. Pope,* supra, Moncier also requested this Court to

award interest from the date of the taking, January 1965. This, we cannot do.

The holding in Pope is clearly limited to a case where:

"(P)ayment is postponed and litigation later ensues, dealing only with the assessment of the amount of damages * * *." 448 S.W.2d at 668.

In the instant case the litigation in the trial court dealt not only with the assessment of the amount of damages, but also with the question of whether there had been a "taking" at all. Consequently, interest is allowable only from the date of the judgment and not from the date of the taking.

For the aforementioned reasons, our original opinion is modified as provided herein; and the judgments of the Circuit Court and Court of Appeals are affirmed.

DYER, CHIEF JUSTICE, and CRESON, JUSTICE, and BOZEMAN, SPECIAL JUSTICE, concur.

McCANLESS, JUSTICE, not participating.