IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 23, 2002 Session

## RAY D. EDWARDS, SR., and wife, JEWELE C. EDWARDS, and JOHN F. GAZICK, and wife, HELENE K. GAZICK v. HALLSDALE-POWELL UTILITY DISTRICT KNOX COUNTY, TENNESSEE

Direct Appeal from the Circuit Court for Knox County
No. 3-104-00      Hon. Wheeler A. Rosenblam, Circuit Judge

FILED SEPTEMBER 25, 2002

No. E2002-00395-COA-R9-CV

This is an appeal from the grant of partial summary judgment for defendant that plaintiff could not maintain an action for inverse condemnation. On appeal, we vacate the grant of summary judgment.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

J. Myers Morton and George W. Morton, Jr., Knoxville, Tennessee, for Appellants.

Samuel C. Doak and Dan D. Rhea, Knoxville, Tennessee, for Appellee.

**OPINION**

In this action for damages under theories of inverse condemnation and nuisance, the Trial Court granted defendant partial summary judgment as to plaintiffs' claim for inverse condemnation, and held that plaintiffs' claims would be tried pursuant to the Governmental Tort Liability Act. The Court then permitted an appeal pursuant to Tenn. R. App. P. 9, which we granted.

Plaintiffs sued defendant which is a sewer provider for plaintiffs' homes, alleging that in December 1999, raw sewage backed up into their homes and flooded the lower level of both homes, causing significant damage. Defendants answered denying all allegations except that it was a statutorily created utility district, subject to the Governmental Tort Liability Act, and that it

provided service to the area where plaintiffs reside.

Plaintiffs filed a Motion for Summary Judgment, and a statement of undisputed facts, setting forth the following facts:

1.      Defendant maintained the sewage system in such a way that sewage backed up into plaintiffs' homes;

2.      The sewage backup interfered with the common and necessary use of plaintiffs' homes;

3.      Plaintiffs could not sell their homes without disclosing the sewage problem.

Plaintiffs also filed the affidavits of the parties, which allege that the homes still contain the smell of sewage, and that plaintiffs have been deprived of the use and enjoyment of their homes, and would have trouble selling their homes due to the problem.

Defendant then filed a Motion for Partial Summary Judgment as to Plaintiffs' Claim for Inverse Condemnation, and alleged there were no material facts in dispute, and that it was entitled to judgment as a matter of law. Defendant submitted a Rule 56.03 Statement of Additional Facts, and stated that the cause of the sewage backup was a root clog in the main sewer line, and that the root clog had been removed. Defendant stated plaintiffs' homes were cleaned and disinfected, and repairs were made.

Defendant attached the Affidavit of Robert Campbell, a consulting engineer who said that one solution to this problem would be the installation of a grinder pump station between each of the homes and the main sewer line, which would prevent backflow. He stated that this would cost $3,000.00 to $5,000.00 per home. Defendant also presented an affidavit of Gary Cobble, a licensed contractor who inspected the homes. He stated, in his opinion, the homes could be repaired and fully remediated, and attached estimates for repair work.

Plaintiffs filed the Affidavit of Hop Bailey, Jr., who is a realtor and real estate appraiser in Knoxville, who stated that in his opinion the value of plaintiffs' homes had been reduced to zero. Plaintiffs also filed a Supplemental Affidavit from Bailey, which states that if plaintiffs were trying to sell their homes, plaintiffs would be required to disclose the sewage issue by virtue of the Tennessee residential disclosure law, and that his opinion was that a buyer would not likely purchase the home knowing of the sewage problem.

The Trial Court granted defendant's Motion and plaintiffs have appealed. Plaintiffs alleged that their property has been taken by defendant because they have suffered a total loss of market value.

Article I, Section 21 of the Tennessee Constitution provides that "no man's particular

services shall be demanded, or property taken, or applied to public use, without the consent of his representatives or without just compensation being made therefor." Prior cases dealing with the issue of inverse condemnation, as well as the eminent domain statute, Tenn. Code Ann. §29-16-123, held that the question of whether a taking of property has occurred is a question for the jury. *See Jackson v. Metropolitan Knoxville Airport Auth.*, 922 S.W.2d 860 (Tenn. 1996); *Johnson v. City of Greeneville*, 435 S.W.2d 476 (Tenn. 1968). In *Jackson*, the Trial Court had granted defendant's motion to dismiss for failure to state a claim of inverse condemnation, where the complaint had alleged the taking of plaintiff's property which was contiguous to the Knoxville Airport by constant overflight of planes and noise vibration and pollution associated therewith. *Id.* The Supreme Court said that it had to review the ruling by taking all material facts as true and construing the complaint liberally in plaintiff's favor, and then determining whether plaintiffs had alleged facts sufficient to establish a jury question regarding whether a taking had occurred. *Id.*

Since the instant case involves a motion for summary judgment rather than a Tenn. R. Civ. P. 12.02 motion, we are required to "view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). Then, we must decide whether there is a general issue of material fact rendering partial summary judgment inappropriate.

In *Jackson*, the Supreme Court clarified the requirements for proving a *prima facie* cause of action for inverse condemnation. The Court stated that the plaintiff had to allege 1) a direct and substantial interference with the beneficial use and enjoyment of the property, 2) interference which was repeated and not just occasional, and 3) interference which peculiarly affected the property at issue and resulted in a loss of market value, i.e. the interference had to be greater than or different from that suffered by the general public as a whole. *Id.* at 865. *Jackson* was dealing with different factual circumstances, and tailored its analysis to the specific interference, i.e., overflight of airplanes. However, the Court expounded on earlier takings cases, and explained that such cases usually involved either a continuing physical occupation or a complete destruction of property rights. *Id.* The Court also cited *Johnson*, another airplane overflight case, wherein the Court implied that any time there was an actual physical injury to property, the owner has grounds to allege that a taking has occurred. The more difficult issue in that case, as well as in *Jackson*, was whether a taking could occur when the property was not actually invaded or physically destroyed, but rather the owner was deprived of its use and enjoyment due to some interference (like planes flying overhead). In those instances, the Court said that the interference had to be "continuing and substantial." *Id.* at 862. In cases where there is an actual physical occupation or damage, however, our courts have always couched this requirement in terms of permanency of injury or damage to the property. *See Pleasant View Utility Dist. v. Vradenburg*, 545 S.W.2d 733 (Tenn. 1977); *Knox County v. Moncier*, 455 S.W.2d 153 (Tenn. 1970); *Ledbetter v. Beach*, 421 S.W.2d 814 (Tenn. 1967); *Barron v. City of Memphis*, 80 S.W. 832 (Tenn. 1904); *Betty v. Metropolitan Gov't of Nashville*, 835 S.W.2d 1 (Tenn. Ct. App. 1992); *Osborne Enterprises, Inc. v. City of Chattanooga*, 561 S.W.2d 160 (Tenn. Ct. App. 1977).

On the foregoing authority, we conclude that plaintiffs have presented sufficient facts

to meet the threshold to take the issue of inverse condemnation to a jury. Plaintiffs' evidence showed a direct and substantial interference with the use and enjoyment of their property and damage to its market value, and the interference was suffered only by plaintiffs and not the general public as a whole. This evidence showed that the sewage backup into their homes caused a permanent loss in market value, and thus their damage was not simply temporary or occasional in nature.

While defendant argues the sewage problem was only temporary and thus, a nuisance and not a taking, and that the homes could be remediated, plaintiffs presented evidence that there had been a permanent loss of market value. It is well settled that only a jury can decide whether the "interference is substantial enough to constitute a taking". *Jackson*, at 862. Accordingly, viewing the facts in the light most favorable to plaintiffs, and allowing all reasonable inferences in their favor, partial summary judgment was inappropriate on this issue, and we vacate the partial summary judgment granted.[1]

Accordingly, the case is remanded for trial by jury. The Trial Court may conduct only one trial by allowing the jury to take the issue of whether a taking has occurred, after the evidence is concluded. If the jury finds that a taking has occurred, then it can assess damages accordingly. If the jury finds no taking has occurred, then the Court can assess damages for plaintiffs' nuisance claim under the GTLA.[2]

The Judgment of the Trial Court is vacated and the cause remanded to proceed in accordance with this Opinion. The costs are assessed to Hallsdale-Powell Utility District.

_____
HERSCHEL PICKENS FRANKS, J.

---

[1]Plaintiffs filed a motion in the Trial Court to amend and allege another sewage backup and moved in this Court to consider pursuant to Rule 14, Tenn. R. App. P. In view of our holding, we find it unnecessary to consider the amendment.

[2] This court has previously held that "a landowner whose property has been adversely affected by a county improvement has a choice of remedies against the county. If the adverse effect amounts to a taking of the owner's property, the proper remedy is inverse condemnation under the eminent domain statutes. If, however, the effect on the landowner's property is a nuisance, . . . the landowner may sue the county for the nuisance." *Smith v. Maury County,* 1999 Tenn. App. LEXIS 601 (Tenn. Ct. App. 1999)(citations omitted).