IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 4, 2004 Session

**FRED M. LEONARD, JR., ET AL. v.
KNOX COUNTY, TENNESSEE, ET AL.**

**Appeal from the Circuit Court for Knox County
No. 3-792-03     Wheeler A. Rosenbalm, Judge**

**Filed March 24, 2004**

---

**No. E2003-02255-COA-R3-CV**

---

This is an inverse condemnation claim brought by Fred M. Leonard ("Plaintiff") against the City of Knoxville (the "City") and Knox County (the "County"). Plaintiff sought damages to his property resulting from flooding which occurred during and after construction to Gleason Road in Knoxville. The Trial Court granted the County's motion for summary judgment because the County had no involvement with the road construction and because the construction occurred solely within the City's limits on a city street. The Trial Court granted Plaintiff's motion seeking to prohibit the City from introducing evidence at trial pertaining to the deed between the City and Plaintiff's predecessor in title, which the City claimed estopped Plaintiff from pursuing this litigation. The jury returned a verdict for Plaintiff for $50,000 and concluded that Plaintiff's action was not barred by the applicable one year statute of limitations. We affirm the grant of summary judgment to the County and the jury's verdict that this action was filed timely. We conclude, however, that the Trial Court erred when it prohibited the City from introducing the deed and evidence concerning whether that deed operated to estop Plaintiff from pursuing this action.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit
Court Affirmed in Part and Reversed in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

Sharon E. Boyce, Knoxville, Tennessee, for the Appellant City of Knoxville.

Glenna W. Overton, Knoxville, Tennessee, for the Appellee Fred M. Leonard, Jr.

Robert C. McConkey, III, Knoxville, Tennessee, for the Appellee Knox County, Tennessee.

# OPINION

## Background

This is an appeal from a jury verdict in an inverse condemnation lawsuit brought by Plaintiff against Knox County, the City of Knoxville, and Whaley & Sons, Inc.[1] Plaintiff owns land located on Forest Oak Drive in the City. Plaintiff claimed his property was permanently damaged as a result of construction which occurred on Gleason Road, a city street located in the City. Plaintiff claimed Gleason Road was raised several feet above its previous elevation. According to Plaintiff, the flow of runoff water was changed permanently because of this increased elevation, resulting in the water flowing down his driveway and into the lower level of his house.

The construction on Gleason Road began after a contract was entered into on December 15, 1993, between the State of Tennessee, Department of Transportation (the "State") and the City. Pursuant to this contract the State was responsible for designing the project, purchasing a right-of-way on behalf of the City, and supervising the construction. The City agreed to make periodic inspections, to pay a portion of the expenses, and to be responsible for maintenance of the road once the project was completed.

In February of 1997, Robert and Linda Tipton sold a portion of real estate they owned to the City for use in the Gleason Road project. The State bought this land on behalf of the City. The deed from the Tiptons to the City provided, among other things, that:

> The consideration mentioned herein includes payment for the property taken, also payment for any and all incidental damages to the remainder compensable under eminent domain.

The Tiptons retained a portion of their land, and this remaining land and a house were sold later to Michael Mills, who then sold the property to Plaintiff in December of 1997. It is this property now owned by Plaintiff that is the subject of this lawsuit.

Whaley & Sons, Inc., was the winning bidder on the construction project and was responsible for making the improvements to Gleason Road. Plaintiff voluntarily nonsuited Whaley & Sons, Inc., without prejudice shortly after the complaint was filed. The County subsequently filed a motion for summary judgment claiming it should be dismissed because it had absolutely no involvement with the construction and improvements to Gleason Road. According to the County, the construction on Gleason Road, a city street, took place entirely within the City's limits and "Knox County had nothing to do with the construction of the improvements, contributed no funding to the improvements, and did not enter into any agreements with the state or the City in connection

---

[1] Andrew D. Flick and Mary Anne Flick also were plaintiffs when this litigation began. However, after the complaint was filed Mr. Flick passed away and Ms. Flick subsequently transferred her interest in the property at issue to Plaintiff, her son.

with the improvements." Neither Plaintiff nor the City disputed the County's lack of involvement with the construction project, but maintained the County nevertheless could be held liable for damages pursuant to Tenn. Code Ann. § 54-5-106. The Trial Court disagreed and granted the County's motion for summary judgment.

The City filed a motion for summary judgment claiming Plaintiff's lawsuit was barred by the applicable statute of limitations and by the doctrine of estoppel by deed. The Trial Court denied the City's motion for summary judgment and the case proceeded to trial with the City being the only remaining defendant. After opening arguments were completed, Plaintiff's counsel moved to prohibit the City from introducing evidence of the purchase of the subject property from the Tiptons as well as the terms and conditions of the deed. The Trial Court granted this motion, thereby effectively precluding the City from raising its defense of estoppel by deed. The City made an offer of proof with regard to its defense of estoppel by deed.

The jury was given a Special Verdict Form containing three questions. These questions and the jury's answers are as follows:

> 1  Did the improvements to Gleason Road cause flooding of plaintiff's property so as to amount to a taking of the property by the defendant?
>
> > ANSWER:  ___Yes___  (Yes or No)
>
> 2.  (Answer this question only if you answered Question 1 "Yes".)
>
> What sum of money is necessary to compensate plaintiff for the taking?
>
> > AMOUNT:  $ ___50,000___  (In Dollars)
>
> 3.  (Answer this question only if you answered Question 1 "Yes".)
>
> Is the plaintiff's action for inverse condemnation barred by the one-year Statute of Limitations?
>
> > ANSWER:  ___No___  (Yes or No)

The Trial Court entered a judgment in accordance with the jury's verdict. The City appeals raising three issues. The City claims the County is liable for the judgment pursuant to Tenn. Code Ann. § 54-5-106 and, therefore, the Trial Court erred when it granted the County's motion for summary judgment. The City also argues there is no material evidence to support the jury's verdict

that Plaintiff's claim was not barred by the applicable one year statute of limitations. The City's final argument is that the Trial Court erred when it precluded the City from presenting any proof on its defense of estoppel by deed. The City does not challenge the amount of damages awarded or whether there was a compensable taking of Plaintiff's property under applicable law. We will, therefore, limit any further discussion of the facts to those which pertain to the three specific issues presented for review.

### Discussion

We first will address whether the Trial Court correctly granted the County's motion for summary judgment. The standard for review of a motion for summary judgment is set forth in *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83 (Tenn. 2000):

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

> To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary

judgment must fail.  *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426.  If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established.  Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor.  *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11.  Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion.  *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples*, 15 S.W.3d at 88-89 (footnote omitted).

As stated previously, the City argues that pursuant to Tenn. Code Ann. § 54-5-106, it is the County and not the City which ultimately is liable for Plaintiff's damages.  The relevant statutes are Tenn. Code Ann. §§ 54-5-106 and  54-5-111 which provide:

**54-5-106.  Judgments and expenses in condemnation cases paid out of county general funds.**  All judgments rendered and other expenses necessarily incurred in such condemnation proceedings shall be paid out of the general funds of the county, in which the expenses are incurred and standing to the credit of the trustee, on the warrant or voucher of the county executive drawn under the direction of the commissioner.

* * * *

**54-5-111.  Rights-of-way for state highways – Liability for cost.** –  (a) The state of Tennessee is liable for and shall be held to pay, through its department of transportation and as other highway expenses are paid, for all rights-of-way and damages and costs incident to the acquisition and use of same, whether by condemnation suits or otherwise as provided by existing laws, necessary to the construction of any highway, or parts thereof, designated and adopted by the department as and for a state or state and federal aid highway in the state's system of highways.

(b) No county affected by such highways will be liable therefor, nor shall any county pay or enter into an agreement to pay any part of such costs.

The City correctly points out that a landowner cannot file a direct action for inverse condemnation against the State. *See Hise v. State*, 968 S.W.2d 852 (Tenn. Ct. App. 1997). If there was a taking of Plaintiff's property and he is entitled to compensation, the City claims Tenn. Code Ann. § 54-5-106 requires Plaintiff be compensated by the County which, in turn, may seek reimbursement from the State pursuant to Tenn. Code Ann. § 54-5-111. In making this argument, the City relies in part on *Marion County v. Tydings*, 169 Tenn. 286, 86 S.W.2d 565 (1935). In *Tydings*, the plaintiffs sued Marion County for the value of land taken by the commissioner of highways and public works. It was agreed that Marion County had nothing to do with the taking of the land and had not entered into any agreements with the State. The trial court nevertheless held Marion County was statutorily liable for the takings. Our Supreme Court affirmed, stating as follows:

In no case has this court awarded an execution against the state, or the commissioner of highways and public works, for lands taken in the construction of highways, and this court has given no construction to the 1931 act tending to exempt the county from liability to the landowner for lands taken for highway uses, even though such lands be taken by the state. We are not willing now to so construe the act. To do so would be to read into the act a purpose and exemption not found expressed in the language of the act, nor reasonably implied therefrom. Indeed, such construction would seem to deprive the landowner of a remedy, since it has been held that the act gives the landowner no right of action against the department of highways and public works (*Phillips v. Marion County*, *supra*), and the state cannot be sued. The uniform construction heretofore given the act is such as to indicate that this court considers the county to be liable for lands taken for highway purposes, just as it was prior to the passage of the act; and the cases here under consideration well illustrate the wisdom and justice of such construction.

It is immaterial that the county has or has not entered into a contract to co-operate with the department of highways and public works; and whether the obligation of the county be regarded as primary or secondary, as between the state and itself, as to the landowner, the county's liability is direct, and may be enforced.

*Tydings*, 169 Tenn. at 289-90, 86 S.W.2d at 566.

-6-

In our opinion, cases such as *Tydings* are not controlling in the present case. Admittedly, *Tydings* and the present case both involve a county which had nothing to do with the improvements to the road. However, unlike *Tydings*, the present case involves road construction undertaken entirely within the limits of a municipality. *Tydings* would be on point here if the construction in this matter had been undertaken within the limits of Knox County but not within the City on a city street. However, it was on a city street in the City.[2]

The City quite correctly argues that even though the State cannot be sued directly by a landowner, the landowner is constitutionally entitled to just compensation for a governmental taking of his or her property. Nevertheless, we do not believe the above statutes are applicable to the present case because: (1) the County had no involvement whatsoever with the construction project which took place entirely within the corporate limits of the City on a city street; and (2) the City was actively involved in the construction project and entered into a contract with the State wherein it agreed to make periodic inspections, to pay a portion of the expenses, and to be responsible for maintenance once the project was completed. We believe Plaintiff's right to compensation is found at Tenn. Code Ann. § 7-31-112 which provides:

> **Damage from change of grade or repair–** When any owner of real estate in any municipality sustains any damage to such owner's property by reason of any change made in the natural or established grade of any highway, street or alley, or by reason of the raising or lowering of such grades, or other acts done for the purpose of improving or repairing such ways, the owner shall be paid all damages therefor by such municipality, which damages may be recovered by suit brought at any time in one (1) year from the completion of or the cessation of such works, acts, or improvements; but all benefits accruing by reason of such improvements, acts, or works shall be allowed to affect, reduce, and offset the damages hereinbefore provided.

In light of the foregoing, we conclude the Trial Court correctly granted the County's motion for summary judgment. In reaching this conclusion, we express no opinion on the applicability of Tenn. Code Ann. § 7-31-112 when a city has no involvement in road construction taking place within its corporate limits. We further express no opinion on the respective rights and liabilities that may exist between the City and the State with regard to damages, if any, ultimately awarded to Plaintiff.

The next issue is whether there is material evidence to support the jury's verdict that Plaintiff's claim is not barred by the one year statute of limitations. The jury's verdict on this issue

---

[2] The present case likewise does not involve road construction which takes place partially within the limits of a city and partially within the limits of a county, as was the case in *Charleston v. Ailey*, 210 Tenn. 211, 357 S.W.2d 339 (1962). We express no opinion on how the result in this case would differ, if at all, under these circumstances.

can be set aside only if there is no material evidence to support it. Tenn. R. App. P. 13(d); *Forrester v. Stockstill*, 869 S.W.2d 328, 329 (Tenn. 1994). A verdict cannot, however, be based upon a "mere spark, glimmer or scintilla of evidence." *See Sadek v. Nashville Recycling Co.*, 751 S.W.2d 428, 431 (Tenn. Ct. App. 1988). In resolving this issue, we are guided by our Supreme Court's decision in *Knox County v. Moncier*, 224 Tenn. 361, 455 S.W.2d 153 (1970), wherein the Court stated:

> In determining what amounts to a "taking" in a case and when the "taking" is complete so as to give the landowner a cause of action and begin the running of the statute of limitations, the Court must look to the facts in the particular case under consideration. *Davidson County v. Beauchesne* (1955), 39 Tenn. App. 90, 281 S.W.2d 266.
>
> * * * *
>
> The statute of limitations should be applied in such a manner that the landowner will have the one year period within which to bring his suit "after injury or after reasonable notice or knowledge of such injury and damage." *Morgan County v. Neff* (1953), 36 Tenn. App. 407, 256 S.W.2d 61. We would add to this that the landowner should have one year to commence his action after an injury to his property which reasonably appears to him to be a permanent injury rather than a temporary one. Only when the injury is permanent in nature can there be a "taking" within the contemplation of the statute; and until there is a "taking" the statute of limitations does not begin to run.

*Moncier*, 224 Tenn. at 366-67, 455 S.W.2d at 156.

The complaint in the present case was filed on December 30, 1999. The City argues that by December 14, 1998, Plaintiff's house already had been flooded nine times. Thus, the City argues that Plaintiff either was aware or should have been aware no later than December 14, 1998, that "the damage appear[ed] to be permanent" and he needed to take appropriate legal action to preserve his rights.

Plaintiff testified that after the flooding to his house began in August of 1998, he complained to the State, the City, as well as State Senator Tim Burchett. According to Plaintiff, he was told the flooding would go away once the road construction was completed. Plaintiff's former girlfriend, Ms. Shelley Dane ("Dane"), also testified on Plaintiff's behalf. Dane began residing with Plaintiff in June or July of 1998. Dane testified that contractors with Whaley & Sons, Inc., told her that they were aware of the flooding in Plaintiff's house, and "as soon as the project was done and they put in, you know, the permanent road and permanent driveway and the culverts and everything else that the water [problem] would be fixed." Dane stated this conversation occurred on May 6, 1999.

In *Moncier*, as in the present case, the plaintiff was assured that the flooding would be remedied.  According to the *Moncier* Court:

> Plaintiff was justified in believing that no "taking" had occurred until after January 1965.  From 1963 until 1965, Moncier discussed the flooding with the State engineers, and he was assured that the problem would be alleviated.  In fact, after the March 1963 flooding the State reconstructed the catch basin on Moncier's property.  Thus, during this time period, 1963 to 1965, Moncier reasonably assumed that any injury to his land was of a temporary nature.  However, after a substantial part of the construction was completed in September 1964, and subsequent flooding occurred in January 1965, plaintiff was then justified in assuming that such flooding constituted a permanent situation and not merely a temporary inconvenience.  This was the first time that Moncier could be charged with knowledge that the injury to his property was permanent, thus constituting a "taking."

*Moncier*, 224 Tenn. at 368, 455 S.W.2d at 156.  We believe the testimony of Plaintiff and Dane to the effect that they were told as late as May of 1999 that the flooding would be remedied once the project was completed constitutes material evidence to support the jury's verdict that the one year statute of limitations had not expired when the complaint was filed on December 30, 1999.  We affirm the Trial Court's judgment on this issue.

The final issue is the City's claim that the Trial Court committed reversible error when it precluded the City from pursuing its affirmative defense of estoppel by deed.  When arriving at a determination to admit or exclude evidence, a trial court generally is accorded a wide degree of latitude and will be overturned on appeal only where there is a showing of abuse of discretion.  *Otis v. Cambridge Mutual Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992).  According to the City, the language in the deed between the Tiptons and the City estops Plaintiff from pursuing his inverse condemnation claim.  As noted above, the deed provides that the compensation paid includes payment for the property taken as well as "payment for any and all incidental damages to the remainder compensable under eminent domain."  The City argues that the damages sought by Plaintiff are "incidental damages to the remainder."  Although not entirely clear from the record, the Trial Court apparently concluded that the "incidental damages" language in the deed could not refer to potential future flooding.  According to the Trial Court, "I don't think that is what incidental damages means."  In effect, the Trial Court held that, as a matter of law, "incidental damages" could not encompass flooding to the remainder property.

Tenn. Code Ann. § 29-17-801 gives the State, counties, and municipalities the power to acquire through eminent domain "such right-of-way, land, material, easements and rights as may be deemed necessary, suitable or desirable for the construction, reconstruction, maintenance, repair, drainage or protection of any street, road, highway, freeway or parkway …."  When such a taking

occurs, the landowner is entitled to be compensated for the "fair cash market value of the property or property rights taken and adding to the same the amount of incidental damages done to the residue of the owner's property, if any, after deducting from the incidental damages to the residue the value of all special benefits, if any, occasioned such residue by the construction of such street …." Tenn. Code Ann. § 29-17-810. In *Dep't of Trans. v. Wheeler*, No. M1999-00088-COA-R3-CV, 2002 Tenn. App. LEXIS 727 (Tenn. Ct. App. Oct. 11, 2002), *no appl. per. appeal filed*, this Court affirmed a $200,000 jury verdict for incidental damages to the plaintiff's remainder property. On appeal, the State argued there was no material evidence to support the verdict. We rejected that argument after reviewing the extensive evidence presented at trial regarding the flooding which occurred on the plaintiff's property resulting from the construction of a two-lane undivided highway and a 132-foot bridge. We noted that "[a]ll this evidence regarding the flooding of the Wheelers' property and the effects of the flooding was relevant to the Wheelers' claim for incidental damages and provided the jury with material evidence upon which to base its verdict." *Wheeler*, 2002 Tenn. App. LEXIS 727 at * 17. *See also Dept' of Trans. v. Webb*, 1988 Tenn. App. LEXIS 538 (Tenn. Ct. App. Aug. 19, 1988)(affirming jury verdict for $6,200 in "incidental damages" to the plaintiff's remainder property caused by flooding and diminished access to the property). In the present case, we believe the Trial Court erred when it concluded, as a matter of law, that flooding to Plaintiff's property could not be considered incidental damages to the remainder property as set forth in the deed between the Tiptons and the City.

Assuming the flooding to Plaintiff's property could be considered incidental damages to the remainder, the issue becomes whether or not the language in the deed between the Tiptons and the City operates to estop Plaintiff. In *Duke v. Hopper*, 486 S.W.2d 744 (Tenn. Ct. App. 1972), this Court discussed estoppel by deed as follows:

> Estoppel by deed has been described as:
>
> > ". . . . a bar which precludes one party to a deed and his privies from asserting as against the other party and his privies any right or title in derogation of the deed or from denying the truth of any material facts asserted in it." Denny v. Wilson County, [198 Tenn. 677, 281 S.W.2d 671 (1955)], supra; 31 C.J.S. Estoppel, § 10, page 295; 28 Am.Jur.2d, Estoppel, Sec. 4, page 602.
> >
> > Ordinarily, recitals of matters of fact contained in a deed are binding on both the grantor and the grantee, such as the date of the instrument, the existence of prior agreements, and the nature or status of either grantor or grantee. See 31 C.J.S. Estoppel, § 37, page 330 and § 38, pages 333-334. Also, Henderson v. Overton (1830) 10 Tenn. (2 Yerg.) 394-397; Denny v. Wilson, County, supra.

The privies of a grantor or grantee are estopped to the same extent as the original parties to the deed and all persons, including heirs, claiming through the party estopped by deed are bound by the estoppel. Spicer v. Kimes (1941 M.S.) 25 Tenn. App. 247, 156 S.W.2d 334.

*Duke*, 486 S.W.2d at 748.

In *Blevins v. Johnson County*, 746 S.W.2d 678 (Tenn. 1998) a warranty deed by the Roark family to the State of Tennessee provided that "[t]he consideration mentioned herein includes payment for any and all incidental damages to the remainder compensable under eminent domain." *Id*. at 680. The Roark family later sold the remainder property to the plaintiff, Richard Blevins, who eventually brought an inverse condemnation lawsuit claiming the State had reduced the unrestricted access along the frontage of his property. *Id.* The defendant argued that the language in the deed estopped the plaintiff from pursuing his claim. The Supreme Court ultimately concluded that the plaintiff was estopped by the deed and the type of damages suffered by the plaintiff were withing the contemplation of the parties to that deed. While making this analysis, the Court also discussed the circumstances under which an estoppel would or would not arise which requires, among other things, an analysis of whether the parties to the deed contemplated the type of damages suffered as well as whether the damages would have been "so speculative and conjectural that a court would have rejected any proof regarding them in a condemnation action at the time of the taking." *Id* at 682. The Court also stated:

> In a negotiated taking or in a condemnation suit, the same issue must be resolved as to whether the subsequent damages to the land from which a severance was taken were foreseeable and contemplated by the parties to the deed or to the suit so that the consideration would encompass payment for the injury suffered.
>
> Incidental damages are sometimes called "severance damages, i.e., if only a portion of a single tract is taken the owner's compensation for that taking includes any element of value arising out of the relationship of the part taken to the entire tract," *State ex rel. Pack v. Walker*, 220 Tenn. 661, 662-663, 423 S.W.2d 473, 473 (1968), and "[t]he recital in the deed, that the consideration for it is in full of all damages that the grantor may suffer, is an estoppel and a bar against his right later to sue for such damages." *Denny v. Wilson County*, 198 Tenn. 677, 685, 281 S.W.2d 671, 674 (1955). The unanticipated injury exception to the general rule thus depends on what the parties to a taking knew or should have known at the time of the execution of the deed and of what a subsequent purchaser can be said to have adequate notice ….

*Id.* at 685.

As noted, the City made an offer of proof after the Trial Court granted Plaintiff's motion to exclude any proof regarding the deed between the Tiptons and the City. The offer of proof included testimony of John McKee ("McKee"), a right of way agent with the Tennessee Department of Transportation, who negotiated the purchase of the Tiptons' property. McKee verified the language in the deed provided that the consideration paid included payment for the property taken as well as payment for "any and all incidental damages to the remainder compensable under eminent domain." On cross-examination, when asked to define "incidental damages," McKee stated "[i]ncidental damages is anything, it could pertain to most anything, from what we are talking about here, from drainage, to proximity to the road, and things of that kind." A Negotiator's Report of Call prepared by McKee was admitted for identification. This document contains, among other things, a check-list indicating whether certain items were discussed with the property owner during negotiations. McKee checked "Yes" next to the item which asked if the "effects of construction on the remainder [were] explained." In our opinion, this evidence is relevant to the issue of whether potential flooding to the remainder property was contemplated when the "incidental damages" language discussed above was included in the deed. Therefore, the Trial Court erred in excluding this evidence on the basis that "incidental damages" could not encompass flooding to the remainder of the property. On remand, the City, as the party asserting the defense of estoppel by deed, has the burden "to show that the parties contemplated that the consideration paid for the damages included those subsequently suffered by Plaintiff." *Blevins*, 746 S.W.2d at 686.

In *Blevins*, the Court also stated that notice was an element of estoppel by deed. Notice can be actual or constructive, or may arise from "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts", sometimes referred to as inquiry notice. *Blevins*, 746 S.W.2d at 683. At trial, Plaintiff testified that prior to purchasing the property he was "sure that the title company did [a title search]; the bank requires it …." Plaintiff also testified he knew Gleason Road was being widened and there were temporary construction easements. Plaintiff also was aware that "they were moving the houses because they were widening the road, so … I guess I knew that they at some point had taken property through there." We believe this evidence is relevant to the issue of whether the notice element of estoppel by deed as required by *Blevins* has been satisfied, an inquiry that was foreclosed by the Trial Court's erroneous evidentiary ruling.

We conclude that the Trial Court erred when it precluded the City from introducing evidence on its defense of estoppel by deed. This case is remanded to the Trial Court on the sole issue of whether the deed between the Tiptons and the City operates to estop Plaintiff from pursuing this inverse condemnation claim. If on remand the City successfully proves this defense, then a judgment will be entered for the City. On the other hand, if the City is unsuccessful in proving this defense, then the Trial Court's previous judgment for Plaintiff will be reinstated in its entirety.

**<u>Conclusion</u>**

The judgment of the Trial is affirmed in part and reversed in part, and this cause is remanded to the Trial Court for further proceedings as are necessary consistent with this Opinion. The costs on appeal are assessed one-half against the Appellant, the City of Knoxville, and one-half against the Appellee, Fred M. Leonard.

_____
D. MICHAEL SWINEY, JUDGE